MAYOR, &c., OF TROY *v.* THE MUTUAL BANK.

The system of taxation for municipal purposes is distinct and independent of that for county and State purposes.

The Revised Statutes and the laws amendatory thereof, in regard to taxation, apply to municipalities only so far as they are expressly or impliedly adopted by the charters or other laws regulating taxation for municipal objects.

The right of commutation given to certain corporations by chapter 654 of 1853, extends only to taxes levied by the boards of supervisors.

APPEAL from the Supreme Court. Case submitted without action, under section 372 of the Code. The facts agreed upon by the parties are these: The defendant became incorporated under the general banking law, December 25, 1851, and is located at the city of Troy. Its capital stock, $100,000, was not all paid in until April 20, 1853, and it began to issue cir-

Mayor, &c., of Troy *v.* The Mutual Bank.

culating notes May 23, 1853. On the 3d October, 1853, the plaintiff levied a legal city tax, whereby the defendant was taxed for that fiscal year $991 on its capital stock, and the bank thereby became indebted to the plaintiff in that amount, with interest from October 15, 1853, unless it was exempted from the whole or some part thereof by reason of the facts next stated.

On October 4, 1853, the bank presented to the board of supervisors of Rensselaer county, the affidavit of its president that its net annual profits or clear income had not been, during the preceding year, equal to five per cent on its capital, nor more than $2,000. The board of supervisors determined the affidavit to be satisfactory, and to entitle the bank to commute for its taxes under chapter 654 of 1853. On October 15, 1853, the bank paid to the county treasurer $100. It had no real estate. It refused to pay the city tax, and the plaintiff insisting on payment this Case was submitted. The Supreme Court, at general term in the third district, held that the legislative intention in the act of 1853, was to make a general provision applicable to the assessment and collection of both city and county taxes; that the exemption allowed in the one case, by way of commutation, should be allowed in the other, and it gave judgment for the plaintiff for the same amount as the defendant had paid upon its county tax, $100 and interest. The plaintiff appealed to this court. The cause was submitted on printed arguments.

*John B. Gale,* for the appellant.

*Abram B. Olin,* for the respondent.

JOHNSON, Ch. J. In the case of the *American Transportation Company* v. *The City of Buffalo,*[1] which was determined in this

[1] The American Transportation Company
*v.*
The City of Buffalo.

This was a case agreed upon pursuant to section 372 of the Code. The plaintiff was a stock corporation, organized January 24, 1855, with a capital

court in 1857, the effect of chapter 654 of the Laws of 1853 came in question. It is by virtue of that act that the right of corporations to commute for their taxes exists. It was held, in

of $900,000, and having its principal office in the city of Buffalo, and being taxable, if anywhere, in that city. The board of assessors of the city of Buffalo inserted the plaintiff's corporate name in the assessment roll, on the 1st May, 1855, and assessed it at the aforesaid amount of capital. Within the time allowed for revising the roll, the president and secretary of the company made and delivered to the board an affidavit, showing by particular statements of the receipts and disbursements, and by positive averment, that the company had not, during the preceding year, been in the receipt of any net profits or income; and requested to have the name of the company stricken from the assessment roll. This the board refused to do, but returned the roll, with the assessment against the plaintiff remaining upon it, to the common council, and ultimately the plaintiff was compelled to pay the sum of $8,759.68, the amount of the tax imposed upon it, in respect to the $900,000 of capital stock, together with costs, &c., amounting in the aggregate to $9,519.58. Before the payment, the comptroller of the city had issued a warrant against the plaintiff, pursuant to the provisions of the charter, and the officer had seized upon a vessel belonging to it, and was about to sell it for the non-payment of the tax, and the payment was made under protest and to prevent the sale of the vessel. The officer paid the money to the defendant. The demand for judgment, at the close of the statement of facts, was for the recovery against the city of the amount so paid by the plaintiff, with interest and costs.

The provisions of the statutes upon which the question arose, are as follows: "All lands and all personal estate, within this State, whether owned by individuals or corporations, shall be liable to taxation subject to the exemptions hereinafter specified." (1 *R. S.*, 387, § 1.) Among the exemptions is the following: "The personal estate of every incorporated company not made liable to taxation on its capital in the fourth title of this chapter." (*Id.*, 388.) The fourth title of the chapter concerning the assessment and collection of taxes, relates to taxes against incorporated companies, and commences by declaring that "all moneyed and stock corporations, deriving an income or profit from their capital or otherwise, shall be liable to taxation on their capital, in the manner hereinafter prescribed." (§ 1, 414.) The 13th and 14th sections of the title except turnpike and bridge companies from taxation, where their net annual income shall not exceed five per cent of their capital; but to entitle them to this exemption, the president and secretary are required to make and deliver to the assessors an affidavit showing that they come within the provision. (416, 417.) Other sections of the title contain provisions discriminating in favor of manufacturing and marine insurance companies. The 9th section of the title is as

the case alluded to, that the two systems of taxation, the one for municipal purposes and the other for county and State purposes, are distinct and independent: that the latter species of

follows: "If the president, or other proper officer of any incorporated company named in the assessment roll, shall show to the satisfaction of the board of supervisors, at their annual meeting, within two days from the commencement thereof, by the affidavit of such officer, to be filed with the clerk of the board, that such company [is not in the receipt of any profits or income, the name of such company shall be stricken out of the assessment roll, and no tax shall be imposed upon it]; and the assessment of every moneyed or stock corporation, authorized to make dividends on its capital, from which no such affidavit shall be received, shall be conclusive evidence that such corporation was liable to taxation, and was duly assessed." (416.)   By an act passed July 21, 1853, section 9 of the Revised Statutes, above mentioned, is amended by inserting in lieu of the words included in brackets, the following: "has not been, during the preceding year, in the receipt of net annual profits or clear income equal to five per cent on the capital stock of any such company, paid in or secured to be paid in, after deducting from the amount of their capital stock the assessed value of their real estate, such company shall be entitled to commute for their taxes on such capital stock, by paying directly to the treasurer of the county in which the business of such company is transacted, a sum equal to five per cent on such net annual profits or clear income, and also such further sum as shall have been assessed on such roll as the taxes on their real estate." (Laws 1853, ch. 654, 1240.)   Other parts of this amendatory act provide for taxing the surplus profits of corporations, where such surplus exceeds ten per cent of their respective capitals; and it also repeals the discrimination contained in the Revised Statutes in favor of manufacturing, marine insurance, turnpike, bridge and canal companies, thus placing all these corporations on an equal footing with moneyed corporations as respects taxation; the new rule thus provided being that all these companies are to be taxed on their capital stock as personal property, unless they show themselves entitled to commute under the 9th section as amended.

Before the passage of the amendatory act, and at the same session of the Legislature, the present charter of the city of Buffalo was enacted by a statute entitled: "An act to revise the charter of the city of Buffalo, and to enlarge its boundaries." (Laws 1853, 447.)   The fifth title of this act, relates to the assessment and collection of taxes, and provides that the board of assessors shall prepare an annual assessment roll of each ward in the city, and proceed as near as may be in the manner required by town assessors, except as afterwards provided. (§ 2.)   The common council has the same power to equalize the valuations which the board of supervisors has, in respect to assessments in the towns.   "The assessors shall prepare

taxation forms the subject of the general provisions of the Revised Statutes relating to taxes, and that municipal taxation is governed by the rules prescribed in the Revised Statutes,

two copies of each roll, as equalized by the common council, and certify and deliver one of them to the supervisors, as and for the ward assessment roll for county purposes; and shall certify and retain in their office the other, as and for the ward assessment roll for the year for city purposes." (*Id.*) The fourth section has the following provision, upon which the question in this case turns: "If the board of assessors shall be satisfied, in the manner required by section 9 of the said article [of the Revised Statutes], that any such corporation or association, is not in the receipt of any profits or income; or if the said board shall be satisfied, in the manner required by section 13 of said article, that any turnpike, bridge or canal company, included in the roll, has not a net annual income, exceeding five per cent on the capital stock, paid in, and secured to be paid in, it shall strike the name of such company from the roll." (473.)

The Supreme Court having determined that the plaintiff was not entitled to the benefit of the act of 1853, amending the Revised Statutes, gave judgment in favor of the defendant, for costs; from which judgment this appeal was taken. The case was submitted on printed arguments.

*George B. Hibbard*, for the appellant.

*A. J. McNett*, for the respondent.

DENIO, Ch. J. The provisions of the Revised Statutes, relating to the assessment and collection of taxes, relate only to the taxes to be raised for town, county and State purposes. Where cities and incorporated villages are authorized by their charters or by law, to lay taxes for municipal objects, the Revised Statutes have no primary application to the case; but inasmuch as convenience and propriety require that the principles of taxation should be uniform, the general provisions of law, contained in the Revised Statutes, are usually applied by words of reference, contained in the city or village charters. The last assessment roll, made under the general law, is generally directed to be copied, or in some other way the rules which govern in ordinary cases are required to be observed in the assessment and collection of the city or village tax. Where the general law is made applicable in this way, any change in that law would produce a corresponding change in the method of taxation by municipal corporations, the reference being to the law as it shall exist for the time being. By the Revised Statutes, prior to the amendment of 1853, corporations generally taxable upon their capital, are altogether exempted from taxation, where they are not in the receipt of any profits or income; but to avail themselves of this exemption, one of their officers is required to make an affidavit of the fact, which is to

and the laws amendatory thereof, only so far as by the provisions of the laws imposing and regulating municipal taxation, they are either expressly or impliedly adopted. In that

be laid before the board of supervisors of the county, and thereupon that board is to strike the name of such corporation from the assessment roll. (1 *R. S.*, 416, § 9.) Where a municipal corporation is required to levy its taxes according to the last assessment roll prepared for county taxation, the duty of expunging the corporations who have claimed and proved themselves entitled to the exemption, will have been performed under the general law, and thus uniformity in taxing corporations will in both cases be secured. And when the Revised Statutes came to be amended in 1853, in respect to the taxation of corporations, by taking away the total exemption, and authorizing a commutation in certain cases, as hereafter mentioned, the evidence of a right thus to commute was still to be furnished to the board of supervisors. Where a corporation claimed and was allowed the right to commute, the roll would be so changed by the board as to show that such right had been established; and when that roll came to be used for the purpose of a city tax, the corporation which had established a right to commute would doubtless possess that right in respect to the municipal tax. (*Laws* 1853, 1240, § 9.)

In the charter of the city of Buffalo, the organization for the assessment and collection of taxes is peculiar and different from that which prevails in other cities. Instead of assessors for wards, three assessors are to be chosen for the whole city, who are to constitute a board and have a separate office for the transaction of their business. (*Laws* 1853, *p.* 451, § 1; *p.* 467, § 4; *p.* 472, § 2.) This board is to prepare the assessment roll, and the copy which is to be used for the purposes of the city tax, after being revised by the common council, is to be retained by the board of assessors, and upon that copy the city tax is to be extended. (*Id.*, and § 9.) Hence the assessment roll for the city tax is not laid before the board of supervisors at all; but it is provided that "if the board of assessors shall be satisfied, in the manner required by section 9 of the said article [of the Revised Statutes], that any such corporation or association is not in the receipt of any profits or income, * * * it shall strike the name of such company from the roll." (*Id.*, *p.* 473, § 4.) If the Revised Statutes as to the taxation of corporations had continued unchanged, the only effect of the provision of the charter of Buffalo last referred to, would be to change the board which should pass upon the evidence furnished by corporations claiming exemption from taxation, from the county supervisors to the board of assessors. The facts to be shown and the measure of relief to the corporation is the same. But during the same session of the Legislature, and about three months afterwards, the general tax law was amended, as has been stated, by authorizing a commutation by this class of corporations, by which they were allowed to pay in lieu of a tax on their capital, five per cent on their profits

Mayor, &c., of Troy *v.* The Mutual Bank.

case it was held that the act of 1853, before cited, did not apply to corporations in the city of Buffalo, so far as their liability to municipal taxation was concerned.   These principles

and to entitle them to this right to commute, they were to prove to the board of supervisors that they had not been, during the preceding year, in the receipt of any net profits or clear income. (*Laws* 1853, *p.* 1240, § 9.) The difference between the Revised Statutes as originally enacted, and the amendment of 1853, as concerns corporations of the class to which the plaintiff belongs, is, that by the former, as construed by the courts, no exemption could be claimed where the company had been in the receipt of any profits or income, though such receipts were less than its expenses, and when a right to exemption was established, the corporation was wholly discharged from taxation (*The People* v. *The Supervisors of Niagara,* 4 *Hill,* 20), while by the amendment the relief allowed was a commutation of five per cent on the net profits, and this was extended to all such corporations whose net profits were less than five per cent.  If this corporation was entitled to the benefit of the amended provision when the tax complained of was assessed, it should not have been taxed any amount, for it had no net profits on which the commutation could be reckoned; and the precise question before us is whether it was so entitled.

The general intention of the charter of Buffalo, in the particular under consideration, probably was, to confer on the board of assessors of that city the duty of receiving and passing upon the evidence which corporations, claiming to be relieved from taxation on their capital, might offer in support of such claim; and if the provision had been in language which would admit of that construction, the subsequent amendment of the Revised Statutes would have adjusted itself to the case of city taxation in Buffalo; and there would then have been no difficulty in giving the plaintiff the benefit of the amended provision.  But unfortunately the provision in the charter is of quite a different character.  The enactment is precise, that the evidence to be furnished to the board of assessors is to show that the corporation is not in the receipt of any profits or income, and the act to be done by that board, when the evidence is satisfactory, is to strike the name of the company from the roll.  The charter professes to enact an independent rule for city taxation in Buffalo, not by a reference to the general system of taxation in the State, but by laying down a positive mandate for that case.  The provision as to exempting corporations is the same which is contained in the general tax law, not because it had so enacted, but because the Legislature so determined in regard to the city of Buffalo. The only reference to the Revised Statutes is, as to the manner in which the board is to be satisfied, that is, the kind of evidence, which is to be the same as that provided by the Revised Statutes.  But the thing the board is to be satisfied of, and the relief they are to give when so satisfied, is stated in independent terms, and not by reference to any other law.  When

Mayor, &c., of Troy *v.* The Mutual Bank

of construction being established by the judgment of this court, little now remains to be said. The act under which the right to commute is claimed does not, *prima facie*, relate to municipal taxation. There is no express provision of law in the acts relating to taxation in Troy by which its provisions are adopted. Its own terms prove plainly that the Legislature had in view only the general State and county taxes; for the board of supervisors is the body to whom the application to commute is to be addressed: the county treasurer is the person who is to receive the commuted taxes and there is no way provided by which any part of the commutation money can be applied to the use of the city. It is plain, therefore, that the Legislature

the Legislature came afterwards to change the general law for the assessment of State and county taxes, they overlooked the fact that Buffalo was taxed for city purposes under a special law, and that a change in the charter was required if it was desired, as it doubtless would have been, if the matter had been thought of, that the principle of taxation should be uniform in the two cases. We have not the power to accommodate this legislation, so as to bring about what we may pretty confidently believe the Legislature would have done if the subject had been brought to its attention. The board of assessors of Buffalo was not authorized by law to receive evidence touching the amount of net profits which this corporation has realized, but only whether it had received any profits. It was not clothed with power to authorize a commutation, but only to strike the name of the corporation from the roll; and this it could only do, when it was shown that it had not been in the receipt of any profits or income; and as the plaintiff could not make out such a case, the board could do nothing but that which it has done, namely, assess the corporation for the amount of its capital.

It does not follow, as has been argued, that the assessment of corporations for county purposes, in Buffalo. is to be according to the rule prescribed in the charter for city taxation. The copy of the roll to be delivered to the supervisor, for county purposes, according to section 2, of title 5, of the charter, is to be laid before the board of supervisors of the county. To that roll, the provisions of the amendment of the Revised Statutes will apply, and it is the duty of the board to receive the evidence and make the decision prescribed by the amendment.

It follows from what has been said, that the judgment of the Supreme Court ought to be affirmed.

Mr. Justice BROWN delivered an opinion to the same effect, and all the judges concurred.

either intended that commuting corporations should not con tribute at all to municipal taxes, when those taxes were by law raised and received by the municipal authorities, or else that they did not embrace that class of cases within the inten- tion with which they framed the law authorizing commuta- tions. The latter is much the more reasonable interpretation; the other is entirely unreasonable and cannot be seriously admitted, as possible.

The judgment should be reversed and judgment rendered for the city of Troy, for the amount of the unpaid tax with interest and costs.

All the judges concurring,

Judgment accordingly.