STEPHEN K. WILLIAMS, Appellant, *v.* THE BOARD OF SUPERVISORS OF WAYNE COUNTY, Respondent.

An assessment upon property which is by law exempt from taxation is illegal; and, in such case, a county court has power under the act of 1869 (§ 5, chap. 855, Laws of 1869), extending the power of boards of supervisors, etc., to order such board to refund the amount of a tax so illegally assessed.

Under the provisions of the statute (1 R. S., 389, § 5) exempting agents of moneyed corporations or capitalists from taxation "for any moneys in their possession, or under their control, transmitted to them for the purposes of investment, or otherwise," and exempting demands belonging to non-residents of the State sent to or deposited in this State for collection (1 R. S., 419, § 3), foreign capital sent here for investment is protected from taxation, whether invested or uninvested, and whether the securities received therefor are taken away or remain here for collection.

Upon application to a county court for an order, under said act of 1869, directing the board of supervisors to refund a tax upon personal property assessed to petitioner as agent, the proof was to the effect that the property so assessed consisted of bonds and mortgages, some of which had been sent to him for collection by a non-resident of the State, the residue

had been taken by him on re-investments, and had been left or deposited with him for collection. *Held* (CHURCH, Ch. J., FOLGER and EARL, JJ., dissenting), that such property was exempt from taxation; and the assessors having refused to deduct it from the agent's assessment, on due application being made, and a tax having been imposed thereon and paid by him under protest, that the county court properly ordered the refunding of such tax.

Also, *held,* that the act of 1855 (chap. 37, Laws of 1855), which subjects to taxation the capital of non-residents, invested in business in this State, was not in conflict with the statutory provisions above referred to.

*Williams* v. *Supervisors* (14 Hun, 343), reversed.

(Argued June 10, 1879; decided November 11, 1879.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, reversing an order of the County Court of Wayne county, which directed the board of supervisors of said county to refund a tax upon personal property alleged to have been illegally assessed against plaintiff, as agent. (Reported below, 14 Hun, 343.)

The facts appear sufficiently in the opinion.

*Stephen K. Williams,* appellant in person. Chapter 695 of the Laws of 1871 authorizes the county court to order the supervisors to return the amount collected of any tax illegally assessed. (*In re N. Y. Catholic Protectory,* 8 Hun, 91; 71 N. Y., 485, 486; 15 id., 316; 11 id., 563; 58 Barb., 434; 49 N. Y., 243, 352; *People* v. *Suprs. of Chen. Co.,* 11 id., 563, 574, 575; *People* v. *Reddy,* 43 Barb., 540; *Nat. Bk.* v. *Elmira,* 53 N. Y., 59.) The assessment was illegal upon the two grounds shown in the petition to the county court. (*Clark* v. *Norton,* 58 Barb., 434; S. C., affimd., 49 N. Y., 243; *Matter of N. Y. Cath. Protectory,* 8 Hun, 91; *Lord* v. *Arnold,* 18 Barb., 104, 105, 106; *Westfall* v. *Preston,* 49 N. Y., 352; *People ex rel. Hermance* v. *Suprs.,* 10 Hun, 545.) Upon the affidavit before them, made in conformity to statute, the assessors should have struck out the assessment as required by 1 R. S., 419, § 3. (*Livingston* v. *Hollenbeck,* 4 Barb., 10, 16; *People* v. *Reddy,* 43 id., 539.) Moneys of capitalists, in hands of agent, for investment or

otherwise, are exempt from taxation. (1 R. S., 390, § 5, last clause of section.) Bonds, mortgages and securities of non-residents, deposited in this State for collection, are also absolutely " exempt from taxation." (1 R. S., 419, § 3.)

*E. K. Burnham*, for respondent. The county judge had no jurisdiction to entertain the application upon the petition in this case. (*Hermance* v. *Suprs. Ulster Co.*, 5 W. D., 575; S. C., 71 N. Y., 481.) The assessment to Mr. Williams for $10,000, as agent for Zenas S. Crane, was properly made. (Rev. Stat. [6th ed.], 934, § 5; *Hoyt* v. *Comrs. Taxes*, 23 N. Y., 233.) The office of assessor, in determining what property is subject to, and what is exempt from taxation, is judicial. (*Barhyte* v. *Shepherd*, 35 N. Y., 238; *Swift* v. *City of Poughkeepsie*, 57 id., 511; *West. R. R. Co.* v. *Nolan*, 48 id., 514; *Buff. and St. L. R. R. Co.* v. *Suprs. Erie Co.*, 48 id., 93.) The written examination before the assessors having been lost, the testimony of the assessors and their attorney as to the contents of the examination was competent. (2 J. Cas., 488; 2 Cai., 363; 11 J. R., 446; 18 id., 60; 10 Wend., 525; 2 Bosw., 267; *Graham* v. *Chrystal*, 1 Abb. [N. S.], 121.)

RAPALLO, J. The order of the county court, which directed the refunding of the tax claimed by the appellant to have been illegally assessed and levied, was reversed by the Supreme Court at General Term, on the ground that the county court had no authority to order the refunding of the tax, and that the determination of the assessors was conclusive unless reversed on *certiorari*. No opinion was expressed as to the legality of the tax.

The illegality complained of was that the property was by law exempt from taxation. This court is unanimously of opinion that if such exemption is made out, the assessors had no jurisdiction and the tax was not merely erroneously, but illegally, assessed, and that in such a case the county court has power to order the refunding of the tax. The

point was decided by this court in the case of *The N. Y. Catholic Protectory*, May 20, 1879.*

But on the present appeal the question of the legality of the tax has been discussed, and the respondent seeks to sustain the judgment of the Supreme Court on the ground that the county court erred in holding the tax to have been illegally assessed.

The petition presented to the county court stated that in the year 1871 the petitioner was a resident and tax payer of the town of Arcadia, in the county of Wayne, and was assessed upon the tax roll of said town for his real and personal property, and was further assessed on said roll as agent of Z. S. Crane, for personal property, in the sum of $10,000. That he thereupon made affidavit before the assessors, at a time appointed by them for reviewing their assessment, that such property belonged to Zenas S. Crane, who resided at Montclair, Essex county, in the State of New Jersey, and consisted wholly of bonds and mortgages and demands belonging to said Crane which were sent to or deposited in this State for collection, and that the petitioner had no property in nor the control of any of said securities, or the control of any property of said Crane, except as aforesaid and a small sum of money not exceeding about $100 collected from said securities to send to said Crane. The petition also showed that the petitioner had paid the tax under duress and under protest.

The county court, on motion of the counsel for the board of supervisors, appointed a referee to take testimony in the matter, and upon the reference it appeared that the petitioner had made an affidavit, and had also been examined before the assessors, but that the affidavit and examination had been lost. Testimony was taken in reference to the contents of the affidavit and examination, and the petitioner was again examined on the reference, and testified that, after having presented the affidavit referred to in the petition, the matter was adjourned, and that at the adjourned day he was examined before the

* 77 N. Y., 342.

assessors and stated on such examination that the bonds and mortgages referred to in the assessment were deposited with him for collection; that the funds he collected on them he transmitted to Mr. Crane or deposited in bank in his name to his credit; that he reloaned some of the moneys for him or transmitted them to him upon his order; that he advised with him and took his directions about loans; that the petitioner had no interest whatever in said moneys and they were at all times subject to the order of Crane; that some of the bonds and mortgages were sent to petitioner for collection, and others of them had been taken on reloans and were left with him for collection; that the substance was that petitioner was the agent of Crane for collecting the money and reloaning it when he approved of the loan.

There was no material conflict as to the facts, in the testimony taken before the referee, and the question before the county court was whether the securities thus held by Mr. Williams were legally taxable or were exempt.

The general rule in regard to taxation of personal property is that it is to be assessed to the owner at the place of his residence, and, but for the provisions of our statutes which authorize the assessment of persons resident in this State for property held by them as trustees or agents for others, there would be no legal means of taxing the personal property of a non-resident, as there could be no jurisdiction here over the owner. But it is provided in 1 Revised Statutes, 389, § 5, that a resident of this State may be assessed, not only for personal property owned by him, but for such as may be in his possession or under his control as agent, trustee, guardian, executor or administrator. This provision if standing alone would doubtless authorize the assessment complained of. To it however are appended two important qualifications. First, that the products of any State of the United States consigned to any agent in this State for sale on commission shall not be assessed to such agents, and second, that agents of moneyed corporations or capitalists shall not be liable to taxation for any moneys in their possession or under

their control, transmitted to them for the purposes of investment or otherwise. Nothing can be more plain than the policy and purpose of these exemptions. They are clearly intended to further the trade and commerce of the State, and to encourage, and even invite, the sending of foreign capital here for investment. It is argued, however, that the exemption as to capital continues only so long as it remains uninvested, and that when invested, if the securities remain in the hands of the agent they are taxable. If such were the true construction of the provision it would be quite ineffectual, and rather a lure than a protection to foreign capitalists who might send their capital here to be invested under the assurance that it should be free from taxation. But such a construction is precluded by the express provisions of 1 Revised Statues, 419, § 3, contained in the same chapter, which declares that when any bond, mortgage, note, contract, account or other demand belonging to any person, not being a resident of this State, shall be sent to this State for collection, or shall be deposited in this State for the same purpose, such property shall be exempt from taxation, and nothing contained in this chapter shall be construed to render any agent of such owner liable to be assessed or taxed for such property, but every such agent shall be entitled to have such property deducted from his assessment upon making affidavit before the assessors, at the time appointed by them for reviewing their assessments, that such property belongs to a non-resident owner, and therein specifying his name and residence.

These provisions are clearly designed to afford to the foreign capitalist who invests his funds here, every conceivable protection. His capital cannot be taxed while awaiting investment. If the securities are taken by him out of the State he may with impunity send them back to an agent here for the collection of principal or interest. And if, instead of being removed from the State, they are deposited here with an agent for collection, they are equally free. The capital is protected from taxation whether invested or unin-

vested, and whether the securities are taken away, or remain here for collection.

The affidavit presented by the petitioner, as stated in his petition, brings him literally within the statute. The affidavit stated that the securities, were all of them, either sent here for collection, or deposited with him for collection. This statement is not materially varied in the examination had before the assessors, as set forth in the testimony taken by the referee. The only additional fact disclosed by that examination was that when the petitioner made collections he sometimes remitted the proceeds to his principal, and sometimes reinvested them in other bonds and mortgages under his direction; and that at the time of the assessment the only property he held as such agent consisted of bonds and mortgages, some of which had been sent to him for collection and others of which he had taken on reinvestments, and the latter had been left or deposited with him for collection. As to those which had been sent to him, no question can be suggested, and as to those which had been left with him, they also come within the spirit as well as the letter of the statute. There can be no reason why they should stand on any different footing from that which they would occupy if, by direction of his principal, he had deposited them in the hands of some third party for collection.

The wisdom of the policy so clearly indicated by these statutes it is not for us to consider. Our duty is to give effect to the statute according to its manifest intent. It does not appear to have been intended for the benefit of domestic capitalists, but rather for the benefit of borrowers, and of the general trade and commerce of the State.

The act of 1855, which subjects capital invested by non-residents in business carried on by them in this State to taxation here, does not in any manner conflict with the statutes above referred to. The latter were designed to encourage loans to residents of this State, to be used in their own business. The act of 1855 does not relate to foreign capital

in the hands of agents here, or loaned to our citizens, but to capital managed here by the non-resident owners themselves, and was designed to remedy an evil, then existing, which mainly consisted in persons residing near the borders of our State carrying on trades and business here, in competition with our own citizens, and while enjoying the protection of our laws, escaping all the burdens of taxation by having their residences beyond the boundary line.

The order of the Supreme Court should be reversed, and that of the county court affirmed, with costs.

All concur, except CHURCH, Ch. J., and FOLGER and EARL, JJ., dissenting.*

Ordered accordingly.

---

* The dissent was as to the construction of the provisions of the Revised Statutes exempting foreign capital from taxation.