THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSE M. FERRER, as Ancillary Executor, etc., Appellant, *v.* THE COMMISSIONERS OF TAXES AND ASSESSMENTS, etc., Respondents.

*Taxation — exemption of moneys deposited by a non-resident for investment here—*
1 *Revised Statutes,* 389, *section* 5, *as amended by chapter* 176 *of* 1851, *and* 1 *Revised Statutes,* 419, *section* 3.

One William Maden, who resided in Cuba, died in August, 1884, having at that time on deposit with Moses Taylor & Co., of the city of New York, the sum of $106,224, which had been placed by him in their custody for investment. The relator, who had duly qualified as his executor in Cuba, in order to get possession of the money so deposited, took out ancillary letters in this State, and thereafter demanded the money from Taylor & Co., who refused to pay it over.

Upon the hearing upon the return to a *certiorari,* brought to review the action of the respondents, in assessing the relator for the sum mentioned as personal property:

*Held,* that as the fund was sent here for investment by the deceased, and his will showed that it was his intention that a certain portion thereof, at least, should be invested in United States securities, it was exempt from taxation under the provisions of section 5 of 1 Revised Statutes, page 389, as amended by chapter 176 of 1851, and section 3 of 1 Revised Statutes, 419.

APPEAL from an order of the Special Term, directing judgment for the respondents on the hearing upon the return to a *certiorari.*

*A. B. Cruikshank,* for the appellant.

*George S. Coleman,* for the respondents.

BRADY, J.:

It appears from the record that William Maden, otherwise known as William Maden and Deacon, was, in his life-time, a capitalist, who resided at Cardenas, in the Island of Cuba. He died in August, 1884, and at the time of his death there was deposited with Moses Taylor & Co., of this city, the sum of $106,224, which was by him placed in their custody for investment. He left a will appointing the relator, a resident of Cuba as it is understood, his executor, who qualified as such in Cuba, and, in order to get possession of the money deposited here and already referred to, took out ancillary letters and thereupon demanded the money from

Taylor & Co., who refused to pay it over. In the meantime the respondents, in the discharge of what they conceived to be their duty, assessed the relator, as executor, for the sum mentioned as taxable personal property, and on his application duly and properly made, refused to cancel the same. This proceeding which was instituted to review the propriety of the tax imposed upon the relator is regular in all respects, and presents, therefore, the abstract question of such propriety. The provisions of the Revised Statutes (1 R. S., m. p. 389, § 5, and 419, § 3, Laws 1851, chap. 176) declare that the agents of moneyed corporations or capitalists shall not be liable to taxation for any moneys in their possession or under their control, transmitted to them for the purpose of investment, and also that any bond, mortgage note, contract, account or other demand belonging to any person not being a resident of the State, if sent here for collection or deposited here for the same purpose, shall be exempt from taxation.

In the case of *Williams* v. *The Board of Supervisors* (78 N. Y., 561), these statutes were under consideration, and it was said that their provisions were clearly designed to afford to the foreign capitalist who invests his funds here every conceivable protection. The court said : " His capital cannot be taxed while awaiting investment. If the securities are taken by him out of the State, he may with impunity send them back to an agent here for the collection of principal or interest. And if, instead of being removed from the State, they are deposited here with an agent for collection, they are equally free. The capital is protected from taxation whether invested or uninvested, and whether the securities are taken away or remain here for collection."

" Nothing could be more plain," said the court, " than the policy and purpose of these exemptions. They are clearly intended to further the trade and commerce of the State, and to encourage and even invite the sending of foreign capital here for investment."

This unavoidable interpretation of the statutes referred to, their language, object and design being properly understood and carried out, disposes of the propriety of the taxation here complained of. There seems to be no appropriate answer, no presentation of any fact excepting the fund in question from the application of the rule thus pronounced. It is true that the respondents seek to sus-

tain the validity of the tax by asserting that the fund is a demand or obligation due from Moses Taylor & Co., to the estate of which the relator is the executor, and as such is intangible and does not require and is not susceptible of physical possession.

Assuming that to be so, the design of the testator in sending it here has not been changed. It was deposited for the purpose of investment and for no other purpose according to the record, there being nothing in the case to indicate that the testator had changed the purpose or object in view. So far as anything is disclosed on that subject, it appears that the relator, who was the executor of the depositor, came to this State from Cuba, for the purpose of obtaining the necessary legal status to enable him to get possession of the money, and with the intention, in order to carry out the provisions of the will of the depositor, of investing at least $70,000 in bonds of the United States. And, under such circumstances, the observation of the court in *Williams* v. *The Board of Supervisors* (*supra*), and already quoted, is applicable, namely, "his capital cannot be taxed while awaiting investment."

There can be no doubt under all the facts and circumstances which control the question before us, that the fund of the taxation of which complaint is made, was sent here for investment, and left for investment and was taxed while awaiting investment, and upon the erroneous theory that the death of the depositor made a change in its status. There is nothing to indicate that; on the contrary, the evidence discloses that the intention of the testator was expressed, even in his will, of investing a certain portion at least of the fund in United States securities.

Under these circumstances we entertain no doubt that the fund was within the provisions of the statutes referred to; that the tax was illegal, and that the order appealed from should be reversed and the assessment directed to be canceled. No costs, however, will be allowed to the appellant.

DAVIS P. J. and DANIELS J., concurred.

Order reversed and assessment canceled, without costs.


the preparation of Part II.