Kings County.—Hon. ABRAHAM LOTT, Surrogate.—April, 1887.

MATTER OF ENSTON.*

*In the matter of compelling payment of the amount of tax upon the property given by the will of HANNAH ENSTON, deceased, to collateral relatives, etc.*

Property within the State, passing by the will of one who died a resident of another State, to persons not within the classes exempted by L. 1885, ch. 483, entitled "An act to tax gifts, legacies and inheritances in certain cases," is subject to the tax thereby imposed.

* Affirmed at Brooklyn Gen. Term, July, 1887.

THE petition of James W. Ridgway, as district attorney of Kings county, set forth that, by order of the Surrogate of Kings county, dated March 26th, 1887, William Murray was appointed appraiser, to appraise the property within this State, of decedent, a resident of the State of Pennsylvania, who departed this life in the State of South Carolina, October 26th, 1886, and whose will was admitted to probate at a Surrogate's court of Kings county, on November 4th, 1886; that said appraisement was directed for the purpose of fixing the amount of tax to which her estate was subject by virtue of chapter 483 of the laws of 1885; that on April 4th, 1887, the said appraiser rendered his report of that date, and filed the same in the office of said Surrogate, from which it appeared that, after due notice to Joel W. Sherwood and Robert J. Miller, the executors of the will, he had duly made the appraisement directed, and fixed the amount of tax at $42,177.05; that the executors had refused to pay the tax and it remained unpaid, notwithstanding that abundant funds were in their hands applicable to the payment thereof, and the county treasurer of Kings county had notified petitioner in writing that the tax remained unpaid, and petitioner had probable cause to believe that the same was due and unpaid; and prayed for a citation directed to the executors, commanding them to show cause why the tax should not be paid.

A citation was issued accordingly, and, after a hearing, the Surrogate found that decedent died October 26th, 1886, at Spartansburg, South Carolina; that she never resided or had her domicil in the

State of New York, but, at the time of her death, resided and had her domicil in Philadelphia, in the State of Pennsylvania; that she left real estate situated in the State of New York of the clear market value of $125,575, and personal property consisting of bonds secured by mortgage upon real estate in the State of New York of the clear market value of $471,650, and promissory notes and bonds of foreign municipal corporations and stocks and bonds of other foreign corporations of the fair market value of $246,316.11; all of which she devised and bequeathed to nephews and nieces and strangers in blood; that the said personal securities were at the time of her death within the State of New York; that the moneys invested in the said bonds and mortgages had been sent into this State for investment, by testatrix, to an agent by whom they were thus invested, and the securities remained in this State for collection.

And as conclusions of law, that the tax provided for by chapter 483 of the laws of 1885 upon the succession of said real and personal property, amounting to five per cent. of the value thereof, to wit, $42,177.05, was due from the executors of the will of Hannah Enston to the State of New York and payable to the county treasurer of Kings county; that there should be judgment directing said executors to pay the same and directing that they be allowed a deduction of five per cent. in case they should pay the same on or before April 26th, 1887.

And the Surrogate ordered judgment accordingly, with $70 costs and $200 additional allowance, to be

paid to the district attorney by the executors out of the assets of the estate.

JAMES W. RIDGWAY, *district attorney, and* JOHN F. CLARK, *for the people.*

KENNARD BUXTON, *and* JOSIAH T. MAREAN, *for executors.*

THE SURROGATE.—The tax sought to be recovered in this matter is upon property within this State passing by will, and therefore is within the terms of the act, chapter 483, laws of 1885.

While the grammar of section one of that act is questionable, yet I think the meaning of the law is not doubtful. If it was, then in view of the policy of encouraging the migration of foreign capital into this State (William v. Board of Supervisors, 78 *N. Y.,* 565), and because taxation may be imposed here and in Pennsylvania upon the same property, the act in question might by construction be limited to embrace only the property of residents of this State passing by will or the intestate laws of this State; but where acts of this character have been restricted by construction, the courts have proceeded upon the ground that the legislature had not sufficiently expressed its intention to depart from theretofore well settled rules as to taxation (Thompson v. Advocate General, 12 *Cl. & Fin.,* 1; Wallace v. Attorney, *L. R.,* 1 *Ch.,* 1; U. S. v. Hunnewell, 13 *Fed. Rep.,* 617).

I think it was intended to subject to taxation all property within this State passing by will (to other than certain excepted persons) without regard to the residence of the ancestor, and the provisions of sections eleven and fifteen of the act in question sup-

port this construction. It is conceded for the executors that property passing by grant to take effect at the grantor's death is subject to the tax, without reference to the residence of the grantor, and that the tax on property so transferred was designed to prevent an evasion of the tax by resort to such conveyance. It would follow, if the construction contended for by the executors was allowed, that property of a non-resident passing by will would be free of tax, while property passing by grant from a non-resident, to take effect in possession at the death of the grantor, would be liable to taxation.

I am of the opinion that both real and personal property within this State passing by the will of the testatrix is subject to the tax.