PEOPLE *ex rel.* YOUNG *v.* WILLIS, Clerk, *et al.*

(*Supreme Court, General Term, Fifth Department.* January 24, 1891.)

TAXATION—NON-RESIDENTS—LAND CONTRACTS.

Laws N. Y. 1851, c. 371, § 1, provides that "all debts owing by inhabitants of this state to persons not residing within the United States for the purchase of any real estate shall be deemed personal property within the town or county where the debtor resides, and, as such, shall be liable to taxation in the same manner and to the same extent as the personal property of citizens of this state." The charter of the village of Bath provides that taxes may be assessed on property "within the corporation," and gives the village assessors within the village all the powers of town assessors. *Held,* that debts due to non-residents on land contracts could be taxed by the villages only so far as the land was within the village limits.

Appeal from special term, Steuben county.

Application by Benjamin F. Young, as agent for Henry C. Howard and others, for *certiorari* to Clarence Willis, as clerk, and Henry Faucett, Henry F. Bennett, and Charles A. Ellas, as assessors, of the village of Bath, to review an assessment. The assessment was reduced from $100,000 to $13,-085.30, and repayment of the excessive taxes was directed, and defendants appeal.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Edward Hassett,* for appellants. *M. Rumsey Miller,* for respondent.

CORLETT, J. The relator, Benjamin F. Young, resides in Bath, Steuben county, and was and is the agent of Henry C. Howard, George C. K. Johnstone, Henry Chaplin, and James R. Farquharson, trustees of the Pulteny estate, all residing in England. The *cestui que trust,* Sir Frederick Johnstone, also resides in England. In 1889, Henry Faucett, Charles A. Ellas, and Henry S. Bennett were assessors of the village of Bath. They completed the assessment roll of the village in May, 1889. The said Benjamin F. Young, as agent, was assessed the sum of $100,000 for personal property. On application, the board of assessors refused to correct the roll by reducing the assessment. A writ of *certiorari* was obtained, returnable in Rochester in June, 1889, in response to which the assessors made return, which the relator traversed. A hearing was had at special term in July, 1889, after which the trial court made the following findings:

"That the village of Bath, in and during the year 1889, and for many years prior thereto, was and is a municipal corporation, existing under a charter, namely, chapter 264 of the Laws of 1851 of the State of New York, as amended by chapter 81 of the Laws of 1852, and as amended by chapter 358 of the Laws of 1880. That, in pursuance of such statute, the trustees were authorized to make certain by-laws or ordinances, and did make one in words and figures as follows: 'The assessors shall make out two assessment rolls, and file a copy thereof in the office of the village clerk before the 15th day of May in each year, according to the act of incorporation;' and the same was the only by-law or ordinance relating to the making out and filing of the assessment roll. That the defendant Clarence Willis, in all times during the year 1889, was the clerk of the village of Bath, and the defendants Henry Faucett, Charles A. Ellas, and Henry S. Bennett, at all times during such year, were the assessors of the corporation of the village of Bath aforesaid, and, as such assessors, acted as such in making the assessment roll of the said corporation for the said year. That on or about the 4th day of May, 1889, the said assessors made and completed the said assessment roll of said village for said year, and made and completed one fair copy thereof, that being the date at which the valuations of property within the said corporation for the purposes of assessment were by law required to be taken and made, and posted the notices required by law that they would meet on the 15th day of May, 1889, at a time and place in said village specified in said notice, to review

their assessments. That in and upon the said roll the said assessors made an assessment against the relator, the plaintiff, under the name of 'Benjamin F. Young, agent for Henry C. Howard, commonly called Viscount of Andover, George C. K. Johnstone, Henry Chaplin, and James R. Farquharson, (trustees of the Pulteny estate, so called,)' under the head of 'Valuation of Personal Estate,' '$100,000.00.' That such assessment roll so made as aforesaid, in which the assessment made as aforesaid was contained, was and constituted the assessment roll of the corporation of the village of Bath in and for the year 1889. That the total assessed value of the real estate appearing on said roll was the sum of $1,325,515.00, and the total assessed value of personal property upon said assessment roll was the sum of $600,055.00. That the relator, Benjamin F. Young, now is, and during the year 1889, and for several years prior thereto, was, the agent of the said Henry C. Howard, George C. K. Johnstone, Henry Chaplin, and James Farquharson. That said Young resides, and at all times resided, in the village of Bath, Steuben county, N. Y. That during all of the said times the said Howard, Johnstone, Chaplin, and Farquharson resided, now reside, and have been residents of England, in the kingdom of Great Britain, and during none of said time have they, or either of them, been residents of any of the states of the United States of America. That the only personal property which during the term of one year prior to and including May 23, 1889, was in the possession of the said Benjamin F. Young, with which he had anything to do as their agent, was the property of the said Henry C. Howard, George C. K. Johnstone, Henry Chaplin, and James R. Farquharson as trustees, one Sir Frederick Johnstone being *cestui que trust* under such trust, and he (the said Sir Frederick Johnstone) is, and during all of said years aforesaid was, a resident of the city of London, in England aforesaid. That all of the personal property which the said Benjamin F. Young, as agent as aforesaid, had in his possession on the 4th day of May, 1889, or the 15th day of May, 1889, or at any time between those dates, or with which he had anything to do as agent at either of such times, was as follows: Personal property to the amount of $3,-500.00; notes for the payment of money of the principal sum of $6,236.34, and interest accrued thereon in the sum of $400.00; and contracts for the sale of real estate in the sum of $2,848.96, which contracts were made by and with persons as vendees who were and are residents or inhabitants of the village of Bath aforesaid, but that none of the real estate for the sale of which said contracts were made was situate within the corporate limits of the village of Bath; and also contracts for the sale of real estate made by and with persons as vendees who at all the dates aforesaid resided and still reside in the different counties of the state of New York, and none of whom reside within the corporate limits of the village of Bath, to the amount of $87,914.70. That none of the real estate for which any of the contracts aforesaid were made was situate within the corporate limits of the said village of Bath. That of the said contracts for the sale of real estate, including those before mentioned, as the amount of $2,848.96, less than five thousand dollars were at any of the dates aforesaid contracts for the sale of real estate to vendees residing in the town of Bath, Steuben county, N. Y. That on the 15th day of May, 1889, at the time and place mentioned in the notice given by the said assessors as aforesaid to review their assessment, the said Benjamin F. Young, agent, relator, as aforesaid, appeared in person before said assessors, and then and there presented and filed with the assessors the two several affidavits, copies of which are annexed to the petition herein, and form a part thereof, which affidavits are hereby referred to and made a part hereof. That at such time and place the said relator appeared by attorney, Mr. Edward Hassett opposing, as counsel on behalf of the board, and oral arguments were then and there made and had upon the subject of the said assessment. The said relator, by his counsel, then and there requested the said assessors—*First,* to remove entirely the

said assessment from said roll, on the ground that there was no power to assess the said property; *second,* that if the assessors should hold that they had power to assess the said property, as was claimed by one of them, then that the said assessment should be reduced in accordance with the facts as there stated, and as set forth in the said affidavits.   That at the time and place aforesaid, and after the argument aforesaid, the relator, by his counsel, asked the assessors if there was anything further that they desired of the relator or of his counsel, and was informed by the chairman of the board that there was not.   That said assessors refused to reduce said assessment in any manner or to any sum, and in all respects left the same as it had been made by them as heretofore set forth.   That thereafter, and on the said 15th day of May, 1889, the said assessors claimed to have completed their said assessment roll, and all of them each severally making and subscribing the usual oath prescribed by law of verification to the said roll, which is annexed thereto, and signed and certified the same; and thereupon the said assessors delivered the said assessment roll to the said Clarence Willis, who then was and still is the clerk of the said corporation of the village of Bath; and thereafter, and on the said 15th day of May, 1889, the said assessors, in pursuance of law, gave a notice that the said assessment roll had been completed, and left with the said clerk for inspection, and the writ herein was sued out and served before the expiration of fifteen days thereafter.

"I find as conclusions of law:  (1) That the said assessment of one hundred thousand dollars of the relator's personal property in the said village of Bath was erroneous and illegal, in that it was for the sum of $86,914.70 more than it should have been, and that such assessment should be reduced to the sum of $13,085.30, that being the total amount of taxable property which the relator had in the corporate limits of the village of Bath at the time of the assessment aforesaid.   (2) That the relator is entitled to and may have judgment reducing the amount assessed to him, as agent for Henry C. Howard, George C. K. Johnstone, Henry Chaplin, and James R. Farquharson, on personal property in the village of Bath, for the year 1889, so that there shall only be assessed to him on personal property for that year the sum of $13,085.30, and that all over that amount should be stricken from the said assessment roll on the ground that it is illegal.   (3) That the said relator shall further have judgment herein against the defendants; that there shall be audited to him, and included in the next annual tax-levy of said village, the amount, with interest from the date of payment, which he has been required to pay for taxes assessed to him on personal property, upon the assessment roll in the year aforesaid, over and above the said sum of $13,085.30."

It is assumed by the learned counsel on each side that the findings of the special term on questions of fact were correct.   From the decision of the special term the defendants appealed to this court, upon the claim that the reduction to $13,085.30 was erroneous.   The relator did not appeal from that portion of the findings which adjudged him liable to pay taxes upon the reduced sum.   The village of Bath is a municipal corporation, and was incorporated by chapter 264 of the Laws of 1851, as amended by chapter 81 of the Laws of 1852, and also by chapter 358 of the Laws of 1880.   Section 2 of title 5 of the charter of Bath, as amended, is as follows:  "The trustees are authorized and empowered to raise money by tax, to be assessed on the estates, real and personal, within the corporation, and collect it from the several owners thereof, whether such owners be residents of the corporation or not, and pay all contingent and other expenses of the said corporation; and also to carry into effect the several powers and privileges granted by this act, as hereinbefore provided."   Subdivision 7 of section 3343 of the Code of Civil Procedure provides that "the words ' personal property' include money, chattels, things in action, and evidences of debt."   Section 3, tit. 1, c. 13, pt. 1, (8th Ed.) Rev. St. p. 1083, provides that the terms "personal estate" and "personal prop-

erty" shall be construed to include all household furniture, money, goods, chattels, debts due from solvent debtors, whether on account, contract, note, bond, or mortgage, public stocks, and stocks in moneyed corporations.

It is a general rule that statutes relating to taxation are to be strictly construed. *Central Trust Co.* v. *New York City & N. R. Co.*, 47 Hun, 587, 18 N. E. Rep. 92; *Clark* v. *Norton*, 49 N. Y. 243. The system of taxation for municipal purposes is ordinarily distinct and independent from that for county and state purposes. *Mayor, etc.*, v. *Mutual Bank*, 20 N. Y. 387–389. It will be noticed that the charter of Bath seems to limit the power of taxation against the owner, whether he is a resident or non-resident. The Revised Statutes (part 1, c. 13, tit. 5, § 3, 8th Ed., p. 1160) provide that any contract owned by a person not a resident of this state, "which shall be sent to this state for collection, or shall be deposited in this state for the same purpose, shall be exempt from taxation, and nothing in the laws of taxation shall be construed to render an agent of such owner liable to be assessed or taxed for such property: provided, that upon the day for reviewing assessments he appears and makes affidavit that such property belongs to a non-resident, and therein specifies the name and residence." *Williams* v. *Supervisors*, 78 N. Y. 561–565. Less than $5,000 of the land contracts were for the sale of real estate to vendees living in the town of Bath, Steuben county. The rest were scattered over the different counties in the state of New York. Such contracts, if owned by non-residents, were not looked upon as liable to taxation until chapter 250 of the Laws of 1833, which was repealed by chapter 137 of the Laws of 1837, then chapter 371 of the Laws of 1851, was passed, section 1 of which provides: "All debts owing by inhabitants of this state to persons not residing within the United States for the purchase of any real estate shall be deemed personal property within the town or county where the debtor resides, and, as such, shall be liable to taxation in the same manner and to the same extent as the personal property of citizens of this state." Bath was incorporated the same year. Section 2 of title 4 of the charter thereof is as follows: "The assessors elected under this act shall within the village of Bath exercise all the powers, and perform all the duties, of corporation assessors, in the same manner as town assessors, according to the laws of this state now in force, and any laws which may from time to time be enacted." Chapter 90 of the Laws of 1883, § 13, is: "Assessors of villages incorporated under the general act shall have the power of town assessors, and be subject to the laws applicable to the same." By chapter 308 of the Laws of 1884 it was provided that "the assessors of a village created by special charter shall have the same powers as those incorporated under the general act, except when in conflict with the special charter." It will be thus seen that town assessors had no power to assess land contracts where the land was not located in their town; also that corporation assessors were limited to the exercise of the same powers. Nearly all the land contracts assessed against the non-residents in the present case were those affecting lands outside of the town of Bath; so that it is very clear that those land contracts could not be included in the corporation assessment. If the contention of the learned counsel for the appellant obtains to the full extent claimed by him, it would secure to the village of Bath, for the purpose of assessment for corporation purposes, the benefit of all land contracts, no matter where located in the state, while the town outside the corporation would be confined to contracts within its limits. Such could not have been the intention of the legislature, nor can the statutes above quoted be construed in such a way as to sustain any such claim. *People* v. *Village of Ogdensburg*, 48 N. Y. 390, has no application. It does not distinctly appear in that case where the property assessed was located. The question now under consideration was not called to the attention of the court, or considered. Aside from this, the charter of that village differed from that of Bath. It is not necessary to determine whether, for corporation purposes,

the assessment against the agent was proper to the extent allowed by the special term; for the respondent took no appeal, and that branch of the case is not before this court for review. Nor is it necessary to determine whether the land contracts in the town of which the village was a part could be assessed for corporate purposes. No such question was presented to or passed upon by the special term.

The conclusion of the trial court as to contracts on lands outside the town, of which the corporation was a part, was right. In providing for the assessment of such contracts, the legislature intended to secure to each town the benefit of lands sold in it. It was not intended that towns could assess contracts outside of its limits. If such were the case, non-residents would occupy a hazardous position. Nor did the legislature intend that such property could be assessed for the benefit of municipal corporations to a greater extent than for town purposes. It follows that the decision appealed from must be affirmed.

All concur.