THE PEOPLE ex rel. BENJAMIN F. YOUNG, Respondent, *v.* CLARENCE WILLIS et al., Appellants.

A provision in the charter of a village, giving to its assessors the same powers, within their village, as those exercised by town assessors, does not clothe the village assessors with powers given to town assessors by a special law, relating to one species of personal property, the provisions of which, as to the manner of making the asessessment and collecting the tax, are not applicable to taxation in villages, and are incapable of being carried out in village taxation without amendment of the charter.

The same rule applies to the similar provision in the general act for the incorporation of villages. (§ 13, chap. 291, Laws of 1870, as amended by chap. 90, Laws of 1883; see also chap. 308, Laws of 1884.)

Accordingly *held,* that such a provision in the charter of the village of Bath (§ 2, tit. 4, chap. 264, Laws of 1851) did not make applicable to village assessments the provisions as to assessment and taxation provided for by the act of 1851 (§ 1, chap. 371, Laws of 1851), which declares that debts owing to non-residents upon contracts for the purchase of real estate, "shall be deemed personal property within the town or county where the debtor resides," and as such, liable to taxation the same as personal property of citizens of the state, and prescribes the methods of assessing and taxing the same. ·

But *held,* that said provision of the charter made applicable to village assessments the provisions of the Revised Statutes, which declare all debts due upon contracts to be personal property (1 R. S. 388, § 3), and that every person residing in a town shall be assessed therein for all personal estate owned by him or in his possession or under his control as agent, trustee, etc. (1 R. S. 389, § 5, as amended by chap. 176, Laws of 1851); and so, that debts due to non-residents upon contracts for the sale of real estate situate within the state but not within the village limits, which contracts were in the hands of an agent residing in said village, were liable to assessment and taxation therein against said agent.

Also *held,* that the provision of said charter (§ 2, tit. 5), which empowers the trustees of the village to raise money by tax "to be assessed on the estates, real and personal, within the corporation and collected from the several owners thereof, whether such owners are residents of the corporation or not," did not require the assessors in assessing personal property of a non-resident in the hands of an agent to assess it against the owner by name; that it was not intended to point out the method of making an assessment, but simply the property to be taxed.

Also *held,* that indebtedness under such contracts was not exempted from taxation by the provision of the Revised Statutes (1 R. S. 419, § 3), which declares that any contract or demand belonging to a non-resident

sent to or deposited in this state for collection shall not be taxable; or the provision (1 R. S. 389, § 5, as amended by chap. 176, Laws of 1851), exempting agents from taxation for moneys in their possession or under their control transmitted to them for investment.

(Argued May 3, 1892; decided May 24, 1892.)

Appeal from judgment of·the General Term of the Supreme Court in the fifth judicial department, entered upon an order made January 6, 1891, which affirmed a judgment in favor of the relator, entered upon a decision of the court on trial at Special Term.

This was a proceeding to review by certiorari an assessment by the assessors of the village of Bath, Steuben county.

Mr. Young, the relator, was assessed in 1889 in the village of Bath, where he resided, for $100,000 upon personal property in his possession in that village, as agent for certain trustees, who, with their *cestui que trust*, were non-residents of the United States. This personal property was not taxed elsewhere for municipal purposes, either to the relator or said trustees. The relator applied to the assessors to vacate or reduce the assessment and his request was refused. The case was heard at Special Term on the petition, return, traverse and stipulation. The Special Term found that Mr. Young had in his possession as such agent, at the time said assessment was made, personal property to the amount · of $13,085.30, including contracts for the sale of real estate to the amount of $2,848.96, to vendees residing in said village of Bath, and that he also had contracts for the sale of real estate to vendees residing in the town of Bath, but outside the village limits and in other parts of the state to the amount of $87,914.70. None of the real estate, the subject of said contracts, was situate in the village of Bath, but it was all situate within this state.

The court held that the relator could only be assessed for $13,085.30, and ordered judgment reducing the assessment accordingly.

Further facts are stated in the opinion.

*Edward Hassett* for appellants.   The property in the hands of the relator is not exempt from taxation for municipal purposes in the village of Bath.   (*People ex rel. v. Village of Ogdensburgh*, 48 N. Y. 390 ; Laws of 1884, chap. 308 ; Laws of 1851, chap. 176, § 2 ; *People ex rel. v. Smith*, 88 N.Y. 576.)   The assessors of the village of Bath have power and jurisdiction to assess the relator as agent for the personal property in his possession or control within the village.   (Laws of 1884, chap. 308 ; *Cartwright v. Village of Sing Sing*, 46 Hun, 548 ; Laws of 1890, chap. 90, § 13.)   There is power under the charter to assess the property against the relator as agent.  ·(1 Dillon on Mun. Corp. § 786.)   A liberal construction should be given to the charter of Bath and the statutes relating to taxation.   (28 Barb. 318.) ·Statutes exempting persons or property from taxation are construed most strongly against those claiming the exemption.   (*People ex rel. v. Comrs., etc.*, 82 N. Y. 459 ; 76 id. 64 ; 95 id. 554 ; *Roosevelt Hospital v. Mayor, etc.*, 84 id. 108 ; *P. Bank v. Billings*, 4 Pet. 514 ; *C. R. Bridge v. W. B. Co.*, 11 id. 547 ; *P. & W. R. R. Co. v. Maryland*, 10 How. [U. S.] 393 ; *J. B. Bank v. Skelly*, 1 Black, 436.)   Contracts for the sale of real estate are personal property.   (2 R. S. chap. 13, tit. 1, § 3 ; Code Civ. Pro. § 3343.)   Personal estate is assessable at the residence of the agent, who has it in his possession or control, when the assessment is made.   (*People ex rel. v. Coleman*, 53 Hun, 482 ; *Williams v. Bd. Suprs.*, 78 N. Y. 561 ; *People ex rel. v. Comrs.*, 38 Hun, 536 ; *Hoyt v. Comrs., etc.*, 23 N. Y. 224 ; *Boardman v. Bd. Suprs.*, 85 id. 359 ; *People ex rel. v. Smith*, 88 id. 576.)   The assessors properly refused to reduce the assessment.   (*People ex rel. v. Haupt*, 104 N. Y. 379 ; *People v. Comrs., etc.*, 99 id. 157 ; *People v. Davenport*, 91 id. 581.)   All proceedings upon the part of the assessors' clerk and trustees have been regular and in due and proper form.   (1 Dillon on Mun. Corp. 329, § 317 ; 2 id. 780, § 781.)

*M. Rumsey Miller* for respondent.   There was no power to assess the property against the agent under the charter.   (2

386    People ex rel. Young *v.* Willis et al.    [May,

Opinion of the Court, per Peckham, J.

R. S. art. 1, § 5; Laws of 1850, chap. 927; Laws of 1851, chap. 176, § 2; *Clark* v. *Norton*, 49 N. Y. 243–246; *Mayor, etc.,* v. *N. Bank*, 20 id. 387; *C. T. Co.* v. *N. Y. C. & N. R. R. Co.,* 18 N. Y. S. R. 30–32; *A. T. Co.* v. *City of Buffalo,* 20 N. Y. 388.) Such contracts were not assessable to anyone, because they were exempt by statute from taxation. (2 R. S. 1409, chap. 13, tit. V. § 3; *Williams* v. *Bd. Suprs.,* 78 N. Y. 565; *People ex rel.* v. *Comrs.,* 42 Hun, 560; 105 N. Y. 629; *In re Smith,* 17 N. Y. S. R. 783.) If there was any power in village assessors to assess any portion of the land contracts it was only the amount allowed by the court below, viz., $2,848.96, that being the amount with debtors residing in the corporate limits of the village of Bath. (Laws of 1833, chap. 250; Laws of 1837, chap. 137; Laws of 1851, chap. 371; Laws of 1883, chap. 90, § 13; Laws of 1884, chap. 308; *Village of Olean* v. *King,* 116 N. Y. 355.) As the relator did not appeal from the judgment of Special Term the judgment should be affirmed with costs to the relator. (Laws of 1880, chap. 269, § 6; Code Civ. Pro. § 3239; *People ex rel.* v. *Comrs.,* 101 N. Y. 651.)

Peckham, J. The general policy of this state in regard to taxation is to tax all property which is within it and which receives protection from its laws and their enforcement. This policy has been declared in set terms by that section of the Revised Statutes which provides that "all lands and all personal estate within this state, whether owned by individuals or by corporations, shall be liable to taxation, subject to the exceptions" specified. (Part 1, chap. 13, tit. 1, of R. S.; 1 R. S. 387, § 1.) The rule is taxation for property within the state, and exemption is the exception. The words used are wide and general.

By section 3 of the above cited chapter and title the terms "personal estate" and "personal property," whenever they occur in that chapter must be construed to include all debts due from solvent debtors, whether on account, *contract,* note, bond or mortgage, etc. By section 5 of title 2 of the same

chapter (1 R. S. 389), it was originally provided that every person should be assessed in the town or ward where he resided when the assessment was made, for all personal estate owned by him, including all such personal estate in his possession or under his control as trustee, guardian, executor or administrator, and in no case could property so held under either of these trusts, be assessed against any other person.

In 1833 the legislature passed an act providing for a special manner of assessing contracts, such as are involved in this case. (Laws of 1833, chap. 250.)   This act was repealed in 1837. (Chap. 137, Laws of 1837.)   In 1851 the legislature again passed an act for the taxation of these contracts.   (Chap. 371, Laws of 1851.)   The important feature of that act is as follows : " Sec. 1.   All debts owing by inhabitants of this state to persons not residing within the United States, for the purchase of any real estate, shall be deemed personal property within the town or county where the debtor resides, and as such shall be liable to taxation in the same manner and to the same extent as the personal property of citizens of this state." The act then provides special methods of assessment and for the collection of taxes upon the contracts thus described.

In *People* v. *Trustees of the Village of Ogdensburg* (48 N. Y. 390), it was held that this last named act applied only to taxation in towns, and that the proceedings for the collection of the tax provided for in the act could not be applied to taxation in villages.   In this same year of 1851, the legislature amended the 5th section of the Revised Statutes, above cited (1 R. S. 389), and inserted the word " agent," so that the section should read that every person should be assessed in the town or ward where he resided when the assessment was made, for all personal estate owned by him, including all personal estate in his possession or under his control as *agent*, trustee, etc., and the provision in the section that in no case should property held under either of the trusts so named be assessed against any other person, was retained.   This was the general law of the state, and it provided for the assessment against agents for all personal property of their principals held by them.

Looking at the extensive signification given to the words "personal estate" or "personal property" by the Revised Statutes (1 R. S. 388), it has been held that contracts such as those in question here, were personal estate, and that they existed and had a *situs* at the place where they were held. (*People* v. *Trustees, etc.,* 48 N. Y. *supra.*) As this method of assessing an individual for personal property in his possession or under his control as agent, is provided by a general statute relating to assessment and taxation, and as the special proceeding provided by another statute for assessing such contracts as these, only applies to town taxation, it would seem to follow that in a proceeding which did not involve an assessment for town taxation, the general statute would apply, unless there were some other special provisions which covered the case to the exclusion of the general statute.

The relator makes that claim in this case. He says that the system of taxation for municipal purposes is distinct and independent of that for town, county or state purposes, and that the general provisions of the Revised Statutes regarding taxation, as they have been from time to time amended, apply only to municipalities so far as they are expressly or impliedly adopted by the charters or laws regulating taxation for municipal purposes. This doctrine has received the approval of this court. (*Mayor of Troy* v. *Mutual Bank,* 20 N. Y. 387.)

It is then further argued by the relator that if there be any law providing for an assessment of these contracts for village purposes, it is the special statute already cited in regard to their assessment for town taxation. This statute, it is urged, is referred to and made a part of the scheme (if there be any) for village taxation by reason of a reference to the powers and duties of town assessors contained in the village charter when treating of village assessors.

For the purpose of sustaining the assessment herein the defendants refer to the same statutes cited by the relator, and the defendants claim that in this case in the charter and in other laws which, in their general application, embrace the village of Bath, there is a direct reference to the general law

in regard to assessments already spoken of, and the general law is thereby made applicable to the village assessors of Bath, and they, therefore, maintain the legality of this assessment.

The first provision in the charter to which our attention is called is to be found in section 2 of title 4 of chapter 264 of the Laws of 1851. (Laws of 1851, pages 514, 520.) It reads as follows: The assessors elected under this act shall, within the village of Bath, exercise all the powers and perform all the duties of corporation assessors, in the same manner as town assessors, according to the laws of this state now in force, and any laws which may from time to time be hereafter enacted. The relator says this section makes it incumbent upon the village assessors in making their assessments to follow precisely and in everything the provisions of all laws, general or special, which embrace the subject of town assessors and their powers and duties in making assessments, and that as town assessors must specially assess these contracts under the special act, village assessors must do the same. This claim entirely ignores the method of proceeding laid down in that act for town assessors, and makes no allowance for the fact that the plan of that procedure is such that it is impossible to carry it out so far as it concerns village assessments. (*People* v. *Trustees of Ogdensburg, supra*, at page 398.) We put another construction on this language.

The effect of this section is to authorize the village assessors to exercise within the village the powers of town assessors so far as the same may be applicable to the different situation. The general law of the state provides that the town assessors shall assess a person in the town where he resides, and such assessment shall include all personal estate in his possession or under his control as agent, trustee, etc., and in no case shall such property be assessed against any other person. By virtue of the above-mentioned provision in the charter of the village, this power is transferred to the village assessor, and he must assess a resident in the village where he resides, and such assessment must include all personal estate in his possession or under his control as agent. These contracts are in the posses-

sion of the relator as agent, and they are personal property.
The inference cannot be made that they are to be assessed as
provided for by the special act relating to towns, because, as
we have seen, the act cannot be administered in villages with-
out further legislation.

In giving village assessors the same powers within their
village as those exercised by town assessors, it cannot be sup-
posed the legislature meant to endow the former with powers
under an act which, by its terms, relates only to assessments
for town taxation and the provisions of which are so drawn as
to be wholly inapplicable to villages. The authority must
plainly be measured by the circumstances under which the power
is to be exercised and where the circumstances are substantially
the same the village assessor looks to the law applicable to the
town assessor for his guide. Thus when he comes to inquire
how personal property in the hands of an agent shall be assessed,
he finds the general law which is applicable to a town assessor
and he governs himself by it. He is not to be governed by a
special law applicable to one species of personal property only
and which serves as a guide to the town assessor in regard to
town taxation, because he sees that the provisions of that act
not only are confined to town taxation, but because it is plain,
as is said in the *Ogdensburg* case, that the provisions for
making the assessment and for collecting the tax do not apply
to taxation in villages. Hence it can be unhesitatingly main-
tained that this reference in the charter to the powers and
duties of town assessors does not make the special statute for
the assessment of these contracts part of the law relating to the
village of Bath. It does make the general law applicable to it.

Other legislation is referred to upon this subject. Chapter
308 of the Laws of 1884, entitled " An act to confer addi-
tional powers upon the trustees and officers of incorporated
villages in the state of New York " is cited, and it provides
that the officers of a village created by special charter shall
have the same powers which are prescribed in any general act
for the incorporation of villages, except as such special charter
may be in conflict with any provision of the general act.

Turning to chapter 90 of the Laws of 1883, we find an act amending the general act for the incorporation of villages, which was passed in 1870 and is known as chapter 291 of the laws of that year. The act of 1883, section 13, provides among other things, that in cases where the assessors shall become elective officers under that act, they shall have the power of town assessors and be subject to the laws applicable to the same, subject to the provisions of that act.

The same reasoning which has just been suggested regarding a similar provision in the charter of the village of Bath, applies with the same force here. A statute which applies only to one certain kind of personal property and in relation to town taxation only, and which could not be carried out in relation to village taxation without amendment cannot be held to be applicable to village assessors by reason of the wording of these acts of 1883 and 1884.

One other citation from the charter is made by the relator, which is contained in section 2, of title 5. It is as follows: The trustees are authorized and empowered to raise money by tax, to be assessed on the estates, real and personal, within the corporation and collected from the several owners thereof, whether such owners are residents of the corporation or not, to pay all contingent and other expenses of the corporation and also to carry into effect the several powers and privileges granted by this act, as herein provided.

It is claimed that by virtue of this section the assessors had no power to make an assessment against any one but the owner by name, whether he was a resident or a non-resident.

It will be noticed that this section does not refer to the assessors or assume to point out the method by which they shall make an assessment. It furnishes no rule to them upon the subject. It was evidently not intended to refer, and it does not in fact refer to the administrative details by which an effective and legal assessment was to be levied and a legal tax collected. It in effect did no more than furnish a general power to the trustees of the village to raise money by taxation, and it declared, in substance, that the taxable property should

392     People ex rel. Young *v.* Willis et al.     [May,

Opinion of the Court, per Peckham, J.

consist of all the estates, real and personal, within the corporation and should be paid eventually by the owners thereof, whether they were residents of the village or not. How this result was to be accomplished the section did not point out, nor was there any necessity for or appropriateness in making the attempt. The method or plan by which assessments were to be made, by whom and at what time and in what manner were subjects of other sections treating of assessments. This section does not in any manner restrict or alter the provision otherwise made in the charter in terms or by reference to some other statute by which an assessment is to be made and as to its form and method.

It is like the general provision in the Revised Statutes that " all lands and all personal estate within this state, whether owned by individuals or by corporations, shall be liable to taxation, subject to the exceptions hereinafter specified." It is the statement of a general proposition or policy, and the means or method by which it is to be carried out are left for treatment under appropriate heads.

We are of the opinion that the form of this assessment was proper, and that as the statute relating to the assessment and taxation of these contracts applies only to town taxation, they were properly assessed for municipal taxation against the relator as agent by virtue of the general laws defining such contracts to be personal property and providing for an assessment against an agent for property so held by him.

There is one other ground taken by relator in opposition to this assessment.

Claiming that if assessable at all, these contracts must be assessed under the special act already referred to, he yet urges that even such act does not apply and that the contracts are exempt from municipal taxation under that provision of the Revised Statutes (1 R. S. 419, § 3), which reads as follows : " When any bond, mortgage, note, contract, account, or other demand, belonging to any person not being a resident of this state, shall be sent to this state for collection, or shall be deposited in this state for the same purpose, such property shall be

exempt from taxation; and nothing contained in this chapter shall be construed to render any agent of such owner liable to be assessed or taxed for such property; but every such agent shall be entitled to have any such property deducted from his assessment, upon making affidavit before the assessors at the time appointed by them for revising their assessments, that such property belongs to a non-resident owner, and therein specifying his name and residence." (1 R. S. 419, § 3.)

In 1851, by chapter 176 of the laws of that year (already herein referred to), an admendment was added to the fifth section of article one, title two, chapter thirteen of the Revised Statutes (1 R. S. 389, § 5), by which agents of moneyed corporations or capitalists were exempted from taxation under that section for any moneys in their possession or under their control transmitted to them for purposes of investment or otherwise.

Under the provisions of the Revised Statutes as thus amended by the act of 1851, it was argued, in a case before this court, that the exemption continued only during the time the moneys remained uninvested, and that when invested, if the securities remained in the hands of the agent, they were taxable. Such construction was held impossible by reason of the provisions of the section in the same chapter under which this relator claims exemption and which is above quoted in full. (1 R. S. 419, § 3.) These two provisions, it was held, were clearly designed to afford the foreign capitalist who invested his funds in this state every conceivable protection, and that his capital should be exempt from taxation whether invested or not, and whether the securities were taken away or remained here for collection. ( *Williams* v. *Board of Supervisors,* 78 N. Y. 561; *People ex rel.* v. *Comrs. of Taxes,* 42 Hun, 560; *People ex rel. Cochrane* v. *Coleman,* 128 N. Y. 524.) The foundation for the exemption consists in the fact that it is in substance and effect foreign capital transmitted for investment by the foreign capitalist. This is no such case. The relator is agent of the owners of the real estate lying within this state, and they own as trustees and they are residents of England, and their

*cestui que trust* is also a resident of that country. The trust was created many years ago and a sale of the lands brings no capital from abroad. No funds have been transmitted by reason of these sales by any foreign capitalist for purposes of investment or otherwise. On the contrary, these contracts represent the moneys, or some part thereof, to be paid the foreign residents through their agent here, as the purchase-price of lands in this state previously owned by them as trustees under a trust long ago created and known to all lawyers in western New York as the trust of the " Pulteney Estate," and so described in the record in this case.

Neither the letter nor the spirit of either of the above-cited statutes applies in this case.

We think the orders of both the General and Special Terms are erroneous and they should be reversed, and the assessment originally made by the defendants should be sustained, with costs in all courts.

All concur.

Orders reversed.