CULLEN, Ch. J., GRAY, O'BRIEN, BARTLETT, VANN and WERNER, JJ., concur.

Judgment of conviction reversed and the demurrer to the indictment sustained.

———————

THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM HALEY, Appellant, *v.* DANIEL W. CAHILL, as President of the Common Council of the City of Watertown, et al., Respondents.

TAX—EXEMPTION OF VOLUNTEER FIREMEN IN CITY OF WATERTOWN RELATES TO MUNICIPAL, NOT TO COUNTY AND STATE TAXATION. When the legislature, in dealing with the matter of municipal exemptions in a private statute relating to the subject of relief from assessments as a reward for services rendered, uses only general language, an intent to embrace county and state taxation will not be presumed. The statutory exemption, therefore, "from taxation to the amount of five hundred dollars assessment," accorded to volunteer firemen of the village and after-

wards city of Watertown who have completed a specified term of service, relates to a local exemption and refers to municipal, not to county and state assessments. *The statutes involved collated and discussed.*

*People ex rel. Haley* v. *Cahill,* 102 App. Div. 620, affirmed.

(Argued April 11, 1905; decided May 30, 1905.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 13, 1905, which dismissed a writ of certiorari and confirmed the proceedings of the common council of the city of Watertown and the board of supervisors of Jefferson county in refusing to allow relator a fireman's exemption from payment of state and county taxes.

The following statutes are involved: Laws of 1831 (chapter 291, page 366), entitled " An act to consolidate and amend the charter of the village of Watertown." Section thirteen provides: " The firemen and hook and ladder men shall be exempt from service on juries in courts of record and in the militia, except in case of war, invasion or insurrection."

Laws of 1850 (chapter 322, page 688), entitled " An act to incorporate the fire department of the village of Watertown." Section one constitutes the fire department of the village into a body politic and corporate under the name " the fire department of the village of Watertown."

Laws of 1859 (chapter 330, page 758), entitled " An act to amend an act entitled ' An act to incorporate the fire department of the village of Watertown,' passed April tenth, eighteen hundred and fifty." This act added to the law of 1850 sections nine, ten, eleven, twelve and thirteen. Section ten provides: " The present members of the fire department of the village of Watertown, and all persons who shall hereafter become members of said department, while in actual service shall be exempt from poll tax." Section eleven provides: " The real and personal estate, owned, held or possessed by said department, shall be exempt from taxation."

Laws of 1861 (chapter 135, page 254), entitled " An act to amend an act entitled 'An act to incorporate the fire department of the village of Watertown,' passed April ten, eighteen

1905.]     People ex rel. Haley v. Cahill.          405

N. Y. Rep.]            Statement of case.

hundred and fifty, and an act amendatory thereto, passed April fourteenth, eighteen hundred and fifty-nine." Section ten reads: "The members of the fire department of the village of Watertown, while in actual service, and all persons who shall hereafter complete a service of five years or over in said department, shall be exempt from taxation to the amount of five hundred dollars assessment, and from poll tax, in addition to the exemptions now enumerated by law."

Laws of 1869 (chapter 714, vol. 2, page 1684), entitled "An act to incorporate the city of Watertown." Title VIII, section six (page 1726), reads as follows: "The name and style of 'the fire department of the village of Watertown' is hereby changed to 'the fire department of the city of Watertown,' and the several acts in relation to the said fire department are hereby modified by substituting 'the common council of the city of Watertown' for 'the board of trustees of the village of Watertown,' and 'the mayor of the city of Watertown' for 'the president of the board of trustees,' and so forth, in all respects adapting the provisions of such acts to the provisions of this act without substantially changing the powers, rights, duties and privileges of the said fire department."

Laws of 1896 (chapter 908) is an act which for brevity is called the "Tax Law." In section four are set forth at great length the property exempt from taxation, and subdivision eight reads: "Real property of an incorporated association of present or former volunteer firemen actually and exclusively used and occupied by such corporation and not exceeding in value fifteen thousand dollars."

Laws of 1897 (chapter 760, vol. 2, page 1028), entitled "An act to revise the charter of the city of Watertown." Under this revision of the charter the city of Watertown was authorized to organize a paid fire department. At page 1127 (§ 314) it is provided: That "from and after the organization of the paid fire department provided for in this act, and upon notice from the board of public safety to the fire department of the city of Watertown to such effect, filed with the secre-

tary of the volunteer fire department, the members of the present volunteer fire department of the city shall be under no obligations to attend to the extinguishment of fires in said city and their duties as active firemen shall cease." Section 315 reads as follows: " From and after the date of the filing of such notice with the secretary of the volunteer fire department by the board of public safety, all exemptions from taxation now allowed to members of the fire department shall cease, excepting as herein provided ; all exempt firemen now entitled to exemption from taxation shall continue to be entitled to such exemption, as is now provided by law, and the active members of the volunteer fire department who shall have joined the department prior to the passage of this act, shall be exempt as follows : Those who have completed a service of four years and the greater fractional part of the fifth year, shall be exempt from taxation to the amount of five hundred dollars assessment; those who have been in the service for three years and the greater fractional part of the fourth year, four hundred dollars; those who have been in the service for two years and the greater fractional part of the third year, three hundred dollars ; those who have been in the service for one year and the greater fractional part of the second year, two hundred dollars ; those who have been in the service for the greater fractional part of one year, one hundred dollars."

*E. C. Emerson* and *Henry Purcell* for appellant. The relator was entitled to an exemption of $500 assessment from the payment of state and county taxes. (*Genet* v. *City of Brooklyn*, 99 N. Y. 297, 307 ; *People* v. *Comrs.*, 142 N. Y. 348 ; *Van Deventer* v. *Long Island City*, 139 N. Y. 133 ; L. 1887, ch. 414, § 132 ; L. 1879, ch. 250 ; *Johnson Home* v. *Vil. of Seneca Falls*, 37 App. Div. 147 ; *People* v. *Bd. of Assessors*, 141 N. Y. 476 ; *McKenna* v. *Edmundstone*, 91 N. Y. 231 ; *People* v. *Palmer*, 52 N. Y. 84 ; *Parker* v. *E., C. & N. R. R. Co.*, 165 N. Y. 274 ; *People* v. *Bd. of Canvasers*, 143 N. Y. 84 ; *People* v. *Knox*, 166 N. Y. 444.) Section 2 of chapter 135

of the Laws of 1861, cannot be limited by construction and restricted to municipal taxation alone. (*Johnson* v. *H. R. R. R. Co.*, 49 N. Y. 455; *Mangan* v. *City of Brooklyn*, 98 N. Y. 585; *People* v. *Wemple*, 115 N. Y. 307; *Benton* v. *Wickwire*, 54 N. Y. 226; *F. Bank* v. *Hale*, 59 N. Y. 53; *Matter of O'Neil*, 91 N. Y. 520; *Engel* v. *Fischer*, 102 N. Y. 400; *Matter of Miller*, 110 N. Y. 222; *Schoonmaker* v. *Hoyt*, 148 N. Y. 431; *Matter of Huntington*, 168 N. Y. 410.)    The action of the board of supervisors and of the town and city authorities from 1861 down to 1903 operated as a practical construction of the act of 1861 and establishes that the exemption declared in the statute applies to state and county taxes.    (4 Bacon's Abr. 653; 4 Coke's Inst. 75; *Bank of Utica* v. *Mersereau*, 3 Barb. Ch. 528; *Troup* v. *Haight*, Hopk. Ch. 267; *Purdy* v. *People*, 4 Hill, 384; *McKenna* v. *Delaney*, 5 Cranch, 22; *Fort* v. *Burch*, 6 Barb. 73; *Dubois* v. *Brown*, 1 Dem. 324; *Easton* v. *Pickersgill*, 55 N. Y. 310; *Powers* v. *Village of Athens*, 26 Hun, 287, 99 N. Y. 592; *Mayor* v. *Starin*, 106 N. Y. 2; *Smith* v. *City of Buffalo*, 90 Hun, 118.)

*Elon R. Brown* and *Francis M. Hugo* for Board of Supervisors of Jefferson County, respondent.    The relator is not entitled to an exemption on $500 from taxation for state and county purposes on a fair construction of section 2 of chapter 135, Laws of 1861.    (*Mayor of Troy* v. *Mutual Bank*, 20 N. Y. 387; *Am. Trans. Co.* v. *City of Buffalo*, 23 Barb. 272; 20 N. Y. 388; *People ex rel.* v. *Willis*, 133 N. Y. 383; *Johnson Home* v. *Village of Seneca Falls*, 37 App. Div. 147; Cooley on Taxn. [2d ed.] 303–307; Desty on Taxn. 132–136; *People* v. *Comrs. of Taxes*, 76 N. Y. 64; *People* v. *Comr. of Taxes*, 95 N. Y. 554; *People* v. *Peck*, 157 N. Y. 51; *People* v. *Neff*, 34 App. Div. 83; *People* v. *Davenport*, 91 N. Y. 574.)    If an exemption from state and county taxes was originally intended, such exemption was repealed by chapter 9 of Laws of 1896, known as the Tax Law.    (*Matter of Huntington*, 168 N. Y. 399; *Pratt Insti-*

*tute* v. *City of New York*, 99 App. Div. 525; Cooley on Const. Lim. [7th ed.] 396, note; *L. W. Co.* v. *Clark*, 143 U. S. 1; *Tomlinson* v. *Jessup*, 15 Wall. 454; *C. S. Bank* v. *Owensboro*, 173 U. S. 636; *People ex rel.* v. *Cummings*, 166 N. Y. 110.) The fact that the board of supervisors from 1861 to 1903 has suffered the relator and his associates to enjoy exemption from state and county taxes, is not such a practical construction of the statute as to influence the court to continue a manifestly illegal and inequitable preference. (*Mayor, etc.*, v. *Starin*, 106 N. Y. 1.) Section 4, chapter 908 of the Laws of 1896, known as the Tax Law, is a general statute enumerating the only property exempt from taxation for state purposes, and it is not modified or controlled by section 315, chapter 760 of the Laws of 1897, a purely local statute which confers a new charter upon the city of Watertown and regulates its fire department. (*Johnson Home* v. *Vil. of Seneca Falls*, 37 App. Div. 151.)

*John B. Muzzy* for Common Council of City of Watertown, respondent. The relator is not entitled to exemption from state and county taxes upon an assessment of $500. The exemption applies only to municipal taxation. (*People ex rel.* v. *Coleman*, 135 N. Y. 231; *People ex rel.* v. *Willis*, 133 N. Y. 383; *County of Jefferson* v. *City of Watertown*, 98 App. Div. 494; *People* v. *Comrs. of Taxes*, 76 N. Y. 64; *People* v. *Comrs. of Taxes*, 95 N. Y. 554; *People* v. *Peck*, 157 N. Y. 51; *People* v. *Davenport*, 91 N. Y. 574; *Mayor, etc.*, v. *Mutual Bank*, 20 N. Y. 387.) It was the duty of the common council to levy and collect the amount certified to it by the board of supervisors for state and county purposes upon the property determined by said board to be liable therefor. (L. 1897, ch. 760, §§ 175, 176.)

Bartlett, J. The narrow question is presented under this legislation as to whether the volunteer firemen of the village and afterwards city of Watertown are entitled to exemption from county and state taxes in the amount of five hundred

dollars assessment, or whether the assessment is limited to municipal taxation.

On behalf of the relator it is argued that the proper construction of the exemption from taxation to the amount of five hundred dollars assessment relates, not only to municipal but to county and state taxation, and that practical construction has been given the statute to that effect for many years prior to the year 1903.

On behalf of the common council of the city of Watertown and the board of supervisors of Jefferson county it is insisted that the county of Jefferson and the state of New York are in no way benefited by the services of the volunteer fire department of the city of Watertown, and that the intention of the legislature in providing that a person who had completed a service of five years or over in the department should be " exempt from taxation to the amount of five hundred dollars assessment," must be deemed to have related to a local exemption, and to have referred to the assessment in the village or city of Watertown for local purposes. It is further argued that if the legislature intended to make this exemption from taxation general as to the county and state assessments, it would have expressed it in language clear and unmistakable.

As to the argument of practical construction, it is pointed out that for a number of years last past and more particularly since March 10, 1903, the board of supervisors of the county of Jefferson has, at the different sessions since that time, raised the question as to the right to deduct the claimed exemption of five hundred dollars as against the payment of state and county taxes, and the matter has been repeatedly brought up at different times before the board during that period. It further appears that at a session of the board held in November, 1903, a resolution was passed referring the question of law involved to the attorney-general of the state, who decided that exemption should not be taken into account in determining proportion of the state and county taxes. In November, 1904, proceedings were had in the board that resulted in a submitted case under section 1279 of the Code

of Civil Procedure, in which the county of Jefferson was plaintiff and the city of Watertown and Robert J. Hale, as chief engineer and president of the Watertown Volunteer Exempt Fire Department, were defendants. In this submitted case a recovery was sought on behalf of the county against the city of Watertown for the amount of the taxes which would have been paid to the county for the preceding six years except for the allowance of the alleged erroneous exemptions amounting to $4,051.91.

The learned Appellate Division in the fourth department held that the exemptions only related to the taxes levied for municipal purposes, but refused to order judgment against the city of Watertown in favor of the county of Jefferson, as was stipulated in the submission. The opinion states in this regard (*County of Jefferson* v. *City of Watertown*, 98 App. Div. 494, 498) as follows: "The stipulation does not alter the facts, and in any event, as it is palpable that the plaintiff is not entitled to judgment against the city, we are not disposed to award it. Judgment should, therefore, be rendered on the submission in favor of the defendant, but without costs."

No opinion was handed down by the Appellate Division in the case at bar, but it appears by affidavit that the opinion in the submitted case by Mr. Justice Spring was adopted and is printed in this record.

Referring, briefly, to the exemptions allowed by the legislature, we find that under the law of 1831 (*supra*) the exemption was from service on juries in courts of record and in the militia, with an exception not important here. This language relates to jury and military duty that the fireman owed in common with other citizens residing in the municipality, and by reason of his rendering to his fellow-citizens protection from fire by night and day he was absolved from these additional civil burdens.

The law of 1859 (*supra*) provided an exemption from poll tax; here we have a release from a further local burden; also releasing all real and personal property of fire department from taxation.

In the act of 1861 (*supra*) there is an exemption from taxation to the amount of five hundred dollars assessment and from poll tax. The drafter of this statute was evidently unaware of the provisions of the act of 1859, as exemption from poll tax was there allowed. It is, however, evident that in treating this statute the writer had in mind release from local obligations ; and it seems a strained and unnatural construction that seeks to impose a burden upon the taxpayers of the county of Jefferson, and more particularly the state of New York, in providing a suitable reward for the firemen who were engaged in protecting the property of the residents of the city of Watertown.

In the act of 1869 (*supra*) creating Watertown as an incorporated city we find no change in legislative intention, but a general provision at the close of the section we have already quoted, turning the village fire department into a city fire department, "without substantially changing the powers, rights, duties and privileges of the said fire department."

In the General Tax Law (Laws of 1896, chapter 908), section four indicates the property exempt from taxation throughout the state, and in subdivision eight thereof it is provided that the real property of an incorporated association of present or former volunteer firemen, actually and exclusively used and occupied by such corporation and not exceeding in value fifteen thousand dollars, shall be exempt from taxation.

Here is a general provision of the Tax Law which limits exemption of real property of an incorporated association of present or former volunteer firemen to fifteen thousand dollars in value, while the local act of 1859 (*supra*), relating to Watertown, exempted the real and personal estate of the fire department without limitation as to value.

If it were a material question as to the effect the Tax Law has upon the exemption of volunteer firemen from taxation in the city of Watertown this provision might form the basis of an argument as to what extent former exemptions survived, but in the view we take no such question is presented.

The act of 1897 (*supra*) is a revision of the charter of the

city of Watertown, and provides in section 315 that all exemptions now allowed to members of the fire department shall cease except as herein provided. It then goes on to enact that all *exempt* firemen now entitled to exemptiom from taxation shall continue to be entitled to such exemption as is now provided by law ; and as to the *active members* of the volunteer fire department who joined prior to the passage of this act, they are entitled to exemption according to a certain scale, based on time of service, as appears by the section already quoted above. As to the exempt firemen of the city of Watertown who were entitled to exemption at the time this revised charter was enacted, they stand upon the exemptions in the statutes to which reference has already been made, and if there are any active members of the volunteer fire department who joined the same prior to the passage of this act they are subject to the graded exemptions.

It is argued that this last expression of the legislative will in the act of 1897 discloses the intention of the lawmakers to extend the five hundred dollars assessment to county and state taxation. We are unable to find anything in this last enactment, or in any of the acts that have preceded it, to justify such a conclusion. We are of opinion, as already stated, that the general language employed in all of these acts indicates an intention on the part of the legislature to confine the exemption and assessment to municipal taxation, that being the subject with which it was dealing.

The system of taxation for municipal purposes is distinct and independent of that for county or state purposes. (*Mayor, etc., of Troy* v. *Mutual Bank*, 20 N. Y. 387.) Chief Judge JOHNSON, writing in this case, referred to the decision in *American Transportation Co.* v. *City of Buffalo*, reported in foot note to his opinion, saying : " It was held in the case alluded to, that the two systems of taxation, the one for municipal purposes and the other for county and state purposes, are distinct and independent ; that the latter species of taxation forms the subject of the general provisions of the Revised Statutes relating to taxes, and that municipal taxation

is governed by the rules prescribed in the Revised Statutes, and the laws amendatory thereof, only so far as by the provisions of the laws imposing and regulating municipal taxation, they are either expressly or impliedly adopted." It was further held that the right of commutation given to certain corporations by chapter 654 of the Laws of 1853 extended only to taxes levied by the boards of supervisors, notwithstanding the general language of the statute and strenuous argument to the contrary. There was in this statute language which it was argued entitled them to exemption from general taxation. The act cited is entitled " An act to amend the fourth title of the thirteenth chapter of the first part of the Revised Statutes, entitled Regulations concerning the assessment of taxes on incorporated companies, and the commutation or collection thereof." A portion of the first section of this act refers to the mode of making out the tax list, which is immaterial at this time. It then proceeds to amend section nine of the Revised Statutes, in the chapter and part referred to, as follows : " If the president or other proper officer of any incorporated company named in the assessment roll shall show to the satisfaction of the board of supervisors, at their annual meeting, within two days from the commencement thereof, by the affidavit of such officer, to be filed with the clerk of the board, that such company has not been, during the preceding year, in the receipt of net annual profits or clear income equal to five per cent on the capital stock of any such company paid in or secured to be paid in, after deducting from the amount of their capital stock the assessed value of their real estate, such company shall be entitled *to commute for their taxes on such capital stock* by paying directly to the treasurer of the county in which the business of such company is transacted, etc.    *    *    * "

The situation presented in this case is similar in principle although the facts are different. The inquiry is whether the legislature, when dealing with the matter of municipal exemptions in a private statute relating to the subject of relief from assessments as a reward for services rendered, intends, when

using only general language, to embrace county and state taxation. If this be the true construction, then every village and city in this state would be entitled to demand of the legislature an act imposing upon the various counties and the state itself the burden of rewarding its local fire department by general assessment exemptions.

It is a well-recognized principle that the general policy of this state in regard to taxation is to tax all property which is within it and which receives protection from its laws and their enforcement. (*People ex rel. Young* v. *Willis,* 133 N. Y. 383.)

In *People ex rel. Manh. F. Ins. Co.* v. *Commissioners of Taxes* (76 N. Y. 64, 73) it was said by Church, Ch. J.: " True the legislature has the right to determine what may be and what may not be taxed of the property of these corporations, but exemptions are not favored and cannot be established by doubtful implication. Taxation is the rule and exemption is the exception, and must be clearly established."

In *People ex rel. Twenty-third St. R. R. Co.* v. *Commissioners of Taxes of N. Y.* (95 N. Y. 554, 556) Judge Earl said : " It is the general purpose of the statutes relating to assessment and taxation, to secure an assessment upon all property, real and personal, at its actual value, and they must be construed and enforced with this purpose constantly in view. An intent to exempt any property, or any portion of the value of any property, from taxation must not be presumed, but must be found plainly expressed in the statute."

This principle applied to the case at bar leads to the conclusion that the legislature in providing for exemption from assessment in a certain amount as a reward for services rendered by the volunteer firemen of the municipality of Watertown, had in contemplation municipal taxation when it employed general language, and that we are not at liberty to hold otherwise in the absence of a provision authorizing it in express terms.

It is argued on behalf of the relator that the case of *People ex rel. Pratt Institute* v. *Assessors of Brooklyn* (141 N. Y.

476) is on all fours with this case, and must compel a decision in his favor unless we are prepared to overrule it. That case is clearly distinguishable from the one before us. The Pratt Institute was incorporated for the purpose of establishing in the city of Brooklyn an educational institution in which persons of both sexes were to be taught various branches of useful and practical knowledge, and through which advantages might be offered for mental improvement in the establishment of lectures, art collections, etc. It was also provided in the act that "Any property in the city of Brooklyn actually occupied and used for the purposes aforesaid, or the revenues of which are exclusively devoted to the purposes aforesaid, shall not be subject to local taxation; but this exemption shall not apply to any property in excess of the value of three million of dollars."

It was the duty of the court in the case cited to seek after the intention of the legislature. The Pratt Institute was a well-known seminary of learning, gathering its pupils of both sexes not only from the city of Brooklyn, but from the county of Kings and other localities. Judge GRAY said: "We think it very clear that the intention of the legislature was to exempt this corporation from all taxation, save for state purposes. The term 'local' as applied to taxation would ordinarily be used, and would be generally so understood, to distinguish it from that taxation which is general and for the whole state. As to the state, all taxation is local which is not for the common benefit of its citizens, but only for those residing in a political subdivision or section. When the legislature confers upon a corporation exemption from local taxation its apparent object would fail of attainment if the locality from which it takes away the power to tax be limited to the municipality within which the property is situated; for the property would still be left subject to a local taxation for county purposes. That would not be a reasonable nor a logical view of the legislative act. * * * In our judgment this institution was given exemption from all taxation at the hands of local authorities for the purposes of either the city or the county,

and was only liable to assessment for what might be due in the state."

It will be observed that the question to be determined in the case cited was the meaning of the words " local taxation ; " and it was conceded that the institute was not exempt from state taxation. Judge GRAY further said : " The legislature had in view a proposal to establish this beneficent institution in the city of Brooklyn, with all the benefits which would result to the community in that section of the state, and intended that its property, if acquired and used in that city for the corporate purposes, should not be taxed except only for state purposes." It is, therefore, obvious that the case cited has no application whatever to the one at bar. The statement in the opinion that all taxation is local, which is not for the common benefit of its citizens, but only for those residing in a political subdivision or section, is peculiarly applicable to the case under consideration. Each act involved in this litigation, beginning with the act of 1831 and including the act of 1897, with the exception of the Tax Law of 1896, is a private act relating either to the village or city of Watertown, or the local fire department thereof; they provide for local bounties for the services of the local fire department of that municipality and cannot be regarded, when construed, as public statutes, or as dealing with county or state taxation.

The order appealed from should be affirmed, with costs.

O'BRIEN, J. (dissenting). The assessors and other municipal officers of the city of Watertown charged with the duty of making, revising and completing the assessment roll of all property in the city subject to taxation and the board of supervisors of Jefferson county refused to allow the relator a fireman's exemption from payment of state and county taxes.

He procured a writ of certiorari to be issued to these officers for the purpose of reviewing and correcting the assessment rolls with respect to the exemption that he claims. The Supreme Court at Special Term dismissed the writ upon

the merits and the order was affirmed at the Appellate Division. The controversy really presents but two questions : the first, as to the meaning and scope of what would appear to be a very plain and simple statute, and the second, whether that statute in still in force. Section ten of chapter 135 of the Laws of 1861 enacts as follows :

" The members of the fire department of the village of Watertown, while in actual service, and all persons who shall hereafter complete a service of five years or over in said department, shall be exempt from taxation to the amount of five hundred dollars assessment, and from poll tax, in addition to the exemptions now enumerated by law." The title of the statute, in which this provision is found is " An act to amend an act entitled, 'An act to incorporate the fire department of the village of Watertown,' passed April ten, eighteen hundred and fifty, and an Act amendatory thereto, passed April fourteenth, eighteen hundred and fifty-nine." It will be seen that the laws referred to in this title are no part of the village charter, but special laws to promote the purpose indicated in the title.

The courts below have held that this statute does not exempt the relator from state or county taxation but applied only at the date of its enactment to village taxes and that it applies now only to city taxes. It will be seen that the language employed in the statute is very clear and comprehensive. There is no ambiguity about it. The legislative purpose could not be expressed in any clearer or simpler words. There is no restriction or limitation to be found in the words of the statute that can justify the construction placed upon it by the learned courts below. The statute would not be any clearer if the legislature had said that the exemption should be from *all* taxation. In the absence of some restrictive words, that is obviously what the statute means. To pare down a statute expressed in such clear terms to an exemption from village taxes alone would, it seems to me, be judicial legislation pure and simple. The courts might just as well cut down the amount of the exemption from that designated

27

in the statute to one-half the amount. I am unable to see why that could not be justified upon the same arguments that prevailed to reduce the exemption from all taxation to village taxation only.

It is perfectly evident that this exemption was something granted by the state in the nature of a bounty in order to encourage the creation and the maintenance of the volunteer fire department in the village. It was a laudable purpose that is not in any way contrary to equity or natural justice. Such a statute, it would seem to me, ought to be liberally construed in favor of the fireman rather than strictly against him. The argument to support this latter construction is that, if the statute is construed according to its plain terms, it would be unjust and unreasonable. It is said that the benefits derived from the fire department were limited to the village alone and that neither the state nor the county was at all concerned with the object of the exemption and ought not to bear any of the burdens that flow from it. And, hence, that the statute ought to be restricted in its operation to village taxes and ought not to apply to taxation for state or county purposes.

It seems to me that this argument is quite fallacious. Cities and villages are mere civil divisions of the state. All the powers that they can exercise proceed from the state. They simply exercise certain delegated powers which the state can withdraw at pleasure and can resume and exercise itself where no constitutional restrictions interfere. The delegation of such powers proceeds upon the theory that they can be better exercised by the locality than by the state, but in a broad sense all the powers that pertain to a municipality are founded upon state laws and state policies. Public education, the protection of the public health, the enforcement of order and the administration of justice through local courts, and even the maintenance of a local fire department are all matters in which the state is interested. All the civil divisions of the state are bound up in one sovereignty and what promotes the welfare of one, in a broad sense promotes the welfare of all and of the state itself. An

1905.]     People ex rel. Haley v. Cahill.          419

N. Y. Rep.]     Dissenting opinion, per O'Brien, J.

unwarranted interpretation of this local statute would be felt throughout the state.

Nor is it correct to say that the county at large derived no benefit and was not at all concerned in the creation and maintenance of the fire department in the village. The county at large had an interest in the protection of life and property from destruction by fire in a village where the county seat was located, where the public business was transacted and where the public buildings were situated. Moreover, at the time of the passage of this act it is safe to say that there was not another fire department within fifty miles of the one in question, and it is also safe to say that there is scarcely a village in the county where this department is located that has not, at some time or other and it may be frequently, received the benefit of its services in suppressing fires and protecting life and property from destruction. So, it seems to me, that the proposition that this statute when passed was limited in benefits and burdens to the community within the boundary lines of the village cannot be sustained, and if that is so the contention of the defendants that it would be unjust and unreasonable to apply such a statute outside of those limits does not rest upon any reasonable foundation.

A proposition, a principle or an argument may be often tested by pushing it to its natural and logical results, and it would seem that this method of reasoning can be profitably applied to this case. The fundamental proposition of the learned counsel for the defendant is that the legislative intent was to limit the exemption to village taxes. The intent, whatever it was, must have been formed and fixed at the time of the passage of the law. The intention could not be changed or expanded by subsequent events, but must be referred to the actual situation at the time that the law was passed. That situation was that the present city was then a part of two large country towns divided by a river. There were two villages, one on each side of the river that had village organizations and a village government. Both of these villages paid state, county, town and village taxes. The latter

class of taxes were small in comparison with the other taxes. Each of these two towns had one supervisor, where, in the same territory, there are now several. The two villages were subject to town laws and the town meetings were there held. Both of these villages have since been merged in a city, and some outlying territory has been added. The statute in question, in terms, applied only to the village of Watertown, which then had a population of six or seven thousand. Now, if we seek to carry out the defendants' contention, it is obvious that the only way in which effect can be given to the statute according to the assumed intention of the legislature would be to trace out the boundary lines of the village as they existed at the time of the passage of the law and to limit the exemption to the territory embraced within these lines. We would then have a law on the subject of taxation that could be operated only in a part of the present city and would be difficult, if not impossible, to execute.

An argument which produces such a result must be infected at some point with a flaw or an error, and it is not very difficult to find the error. It is to be found in an attempt to put upon a plain statute a meaning which the words will not bear, and to cramp the statute into a space too small for its natural and ordinary operation. All that is necessary in order to avoid such a result is to hold that the legislature meant what it said and that the exemption applied not only to village taxation, but to taxation for state and county purposes as well. That was the interpretation that this statute has received for more that forty years prior to this controversy, and it is one of the plainest principles of law that a practical construction of such a statute for so long a time by boards of supervisors and city authorities is entitled to great weight, and courts always hesitate to change the construction, especially where the argument against it is no stronger than it appears to be in this case.

If the argument is not plain enough already, possibly it can be made plainer by stating it in a slightly different way. The fundamental proposition, in behalf of the defendants, is that

notwithstanding the broad general words in which the exemption is expressed, yet the legislative intent was to limit the exemption to village taxes; otherwise, the exemption would be contrary to equity and justice, since no one was benefited by the fire department, except those residing within the village limits. This assumes that courts can and ought to reconstruct a statute, expressed in plain words, when it is thought to operate unjustly or contrary to equity. And it assumes further that the statute in question, if construed according to its plain words, will so operate. It would be difficult to state a proposition so utterly untenable in all its parts.

All the cities and villages and other civil divisions are but parts of one sovereignty, which is the fountain head from which all power proceeds. The sovereign delegates a part of his powers to localities to be exercised, not for the exclusive benefit of the locality, but for the general public good. For instance, cities and villages tax themselves for the support of schools, not for the exclusive benefit of a few people, comparatively, who may live within the limits of the city or village, but for the benefit of the whole state as a body politic, and in obedience to state laws and state policies. The Constitution commands the state to provide for the education of all the children in the state, and the localities cannot escape the obligation if they would. The same is true of all other local laws. Even the money expended in keeping the streets and highways in safe condition and repair is for the benefit of the general public, since every one has the same right to use them as the people in the immediate locality. Health laws and other police regulations are not limited in their general scope and purposes to localities, but are parts of a general scheme for the protection of the public health. Laws for the creation and support of local courts are only parts of the general judicial machinery of the state, and are enacted for the benefit of the whole public. Laws creating and providing for the maintenance of volunteer fire departments and for encouraging citizens to join them are no exception. The fire department in question was not created or maintained for the

exclusive benefit of the people within the village limits, but for the benefit of all the people of the county, or of the adjoining counties that were within reach of its operations. The purpose was to protect life and property, and that cannot be cramped into the small space within the village limits, but has a much greater scope. We know that fires in hotels and other public places, and even in private houses, are a great menace to human life, and surely the protection of life cannot be of exclusive local concern, since the victims of such fires are more frequently found among the general traveling public than among the residents of the village. It was to prevent or to mitigate such dangers, whether general or local, that the state enacted the laws that have been referred to.

If one or more of the firemen should move beyond the village limits, where there are no village taxes, of course they would not be entitled to any exemption whatever, if the argument for the defendants is to be accepted, and that would reduce the beneficial purpose of the statute to a mere mockery. They could get no exemption from county, town or state taxes, even after serving five years, since the very corner stone of the argument is that it was the village alone that was deprived by the exemption of the power to tax, and all other taxes, we are told, remained untouched.

It will be seen from the examination of § 4 of the General Tax Law, referred to in the opinion of the learned court below, that seventeen different classes of exemptions are provided for. It is only necessary to read that section in full in order to see the scope and purpose of all these exemptions. Many of them are obviously more local in character and benefits than the exemption in the case at bar; and in every case the exemption is expressed in the same words as in this case. The statute reads: "The following property shall be *exempt from taxation.*" I am not aware that any court ever attempted to ascribe to these plain words a meaning that would limit the exemption to village, city or local taxes of any kind; and yet it would be much easier to frame an argument to confine the exemption, say, on the village church, to

1905.]  People ex rel. Haley *v.* Cahill.  **423**

N. Y. Rep.]    Dissenting opinion, per O'Brien, J.

village taxes, since it might be said that the benefit conferred was limited to the village and even to the congregation. But why should any court hold that an exemption from taxation, expressed in the same words in a general law and a local law, must mean different things? That in the former the words are to be taken according to their plain, natural meaning, while, in the latter case, the words must be limited and restricted by artificial reasoning, in order to work out some real or artificial equity.

If any authority is necessary to show that the decision in this case is wrong it will be found in one of the decisions of this court, which is absolutely conclusive — the case of *People ex rel. Pratt Institute* v. *Assessors of Brooklyn* (141 N. Y. 476). The relator applied for a mandamus requiring the assessors and city authorities to cancel taxes imposed for other than state purposes on its property. The institute was a private, educational institution, organized for purposes described in the charter. It was provided in the act that "any property in the city of Brooklyn actually occupied and used for the purposes aforesaid, or the revenues of which are exclusively devoted to the purpose aforesaid, shall not be subject to *local taxation;* but this exemption shall not apply to any property in excess of the value of three million of dollars." The Supreme Court held that the exemption applied only to city taxes and refused the mandamus. This court reversed the order, holding that the property was exempt from county taxes as well as city taxes. The bearing of that case on the one at bar is direct and obvious, since it decides that even if the exemption in this case was not expressed in general words, as it is, but was limited to *local taxes,* as it is not, still the relator would be entitled to exemption from county taxes, and that covers the whole question.

The brief extract from the opinion meets the defendant's contention in this case completely. After stating that it would be unreasonable to hold that local taxation meant only city taxation, the learned judge proceeded : "That would not be a reasonable, nor a logical view of the legislative act.

The respondent argues that the act fixes the locality of the exemption, when it speaks of 'any property in the city of Brooklyn' as not being subject to local taxation, and that the city only is deprived of the power to tax. The argument is forced. The legislature had in view a proposal to establish this beneficent institution in the city of Brooklyn, with all the benefits which would result to the community in that section of the state, and intended that its property, if acquired and used in that city for the corporate purposes, should not be taxed except for state purposes.    *    *    *  The institution was given exemption from all taxation at the hands of local authorities, for the purposes of either the city or the county." If the argument in that case was *forced*, what is to be said of the argument in this case? I will only add that three of the members of this court, as at present constituted, concurred in that decision, Judge Gray writing the opinion.

The other question involved in the defendants' contention is that the statute upon which the relator relies is not now in force and was not at the time of the commencement of this proceeding. It is said that it has been repealed. No one claims that there has been any express repeal, and all that is claimed is that the General Tax Law, which went into effect in 1896, worked a repeal by implication. That kind of a repeal is not favored. A general law never repeals a local law unless the local law is referred to in some way or the language of the general law is so plain that the two statutes cannot operate together. If both laws can stand, and each can fulfill the purpose of its enactment without conflicting with the other, then it is elementary law that there has been no repeal. This is such a plain proposition and so familiar to the bench and the bar that I will not stop to cite authorities on the question. There is not a word in the general law that conflicts in the least with the special law.

But if there ever was any semblance of argument in the contention that the statute was repealed by the General Tax Law, it is completely swept away by another consideration.

It appears that a year after the General Tax Law was passed, the charter of the present city was revised and re-enacted, with various other laws relating to the city. , We find in that charter a complete recognition of the existence of the act of 1861; since it provides for just the same exemption to firemen who had served five years, and the relator has served six. The new charter practically abolished the volunteer fire department, but preserved its organization and its property, and in providing for a new paid department the legislature was careful to preserve the five hundred dollar exemption to all the discharged volunteers who had served five years or over, and it also provided for a graded exemption to those who were in the actual service at the time but had not served five years. It would seem to be reasonably plain that under these circumstances the law upon which the relator rests his claim has not been touched or affected in any way, but in legal effect was re-enacted a year after the General Tax Law was passed.

My conclusion is that this statute ought to be construed according to its plain words and that it is still in force; and if I am right in this proposition, the order of the Appellate Division and that of the Special Term should be reversed, with costs in all the courts to the relator, and the case should be remitted to the Special Term for another hearing.

HAIGHT, VANN and WERNER, JJ., concur with BARTLETT, J.; CULLEN, Ch. J., concurs with O'BRIEN, J.; GRAY, J., absent.

Order affirmed.